# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| Alexander SMITH, <br><br> Plaintiff, <br> v. <br><br> CITY OF ATLANTIC CITY, Scott EVANS, Chief of the Atlantic City Fire Department; and Thomas J. CULLENY, Jr., Deputy Chief of the Atlantic City Fire Department, <br><br> Defendants. | Civil No. 19-6865 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court by way of Plaintiff Alexander Smith's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction [Doc. No. 2], which seeks to enjoin the City of Atlantic City from disciplining him for violating the Atlantic City Fire Department's ("ACFD" or "Department") grooming policy.

On March 18, 2019, the Court held a hearing on the Motion. Plaintiff argued, in part, that ACFD's grooming policy prohibiting his three-inch beard violates his right to freely exercise his religious beliefs under the First and Fourteenth Amendments. Plaintiff also claimed that Defendants failed to provide a reasonable accommodation and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964. Upon hearing argument and testimony, the Court **DENIED** Plaintiff's Motion for a TRO. The following Opinion provides a more detailed discussion of the Court's March 18, 2019 Order.

## I. BACKGROUND

Alexander Smith is an African American male and Christian. He has worked for the Atlantic City Fire Department for nearly sixteen years. Recently, in December 2018, he grew a three-inch beard to exercise his Christian faith. He then asked ACFD for a religious accommodation that exempted him from the Department's longstanding grooming policy.

Since January 1979, the ACFD has followed operational guidelines that list grooming standards for members. *See* Operational Guidelines O# 0303 [Doc. No. 2-6]. These guidelines contain various rules that govern facial hair. *Id.* For example, sideburns cannot extend below the earlobe, and mustaches cannot extend beyond the lip. *Id.* The guidelines also preclude any firefighter from growing a beard. *Id.* at ¶¶ 5–6. In relevant part, O# 0303 states:

> 5. Members shall be clean shaven while on duty. Exception, those persons called in on an emergency call-back shall not be required to shave prior to arrival at the station or fire scene.
>
> 6. Beards and goatees of any type are specifically prohibited. In no case shall facial hair, including stubble, inhibit the seal of the air mask's face piece.

*Id.* (collectively, "grooming policy").

Plaintiff recently changed roles in the ACFD. Smith Affidavit ("Smith Aff.") at ¶ 22 [Doc. 2-5]. After twelve years in the Fire Suppression Unit, the Department promoted him to Air Mask Technician in November 2015. *Id.* at ¶¶ 3, 22, 25. As an Air Mask Technician, Plaintiff administered fire masks and face pieces and refilled empty or partially empty air bottles at fire scenes. *Id.* at ¶ 3. Plaintiff also performed the Department's annual "fit tests," consistent with respirator standards under the Public Employees Occupational Safety and Health Act ("PEOSHA"). *Id.* The fit test, like the PEOSHA regulation for respirator standards, states that

firefighters serving public entities shall not have facial hair.¹ During ACFD fit testing, Plaintiff checked each member's Self-Contained Breathing Apparatuses and Air Cylinders ("SCBA") and ensured a proper mask seal. *Id.* at ¶ 26. An improper, or loose-fitting seal, increases a firefighter's risk of danger, especially when engaging in fire suppression. As Air Mask Technician, Plaintiff oversaw these annual tests and reported instances of non-compliance to senior members in the ACFD. Despite an ACFD policy requiring annual testing, some ACFD members, including Plaintiff, did not get fit tested each year. *Id.* at ¶ 6.

In December 2018, Plaintiff grew a beard approximately three inches in length. Smith Aff. at ¶ 8. He then contacted Thomas J. Culleny, Jr., Deputy Chief of the ACFD, and Anthony Swan, Solicitor for the City of Atlantic City, and requested a religious accommodation that would permit him to wear a beard. Smith Email, Jan. 3, 2019 [Doc. No. 2-14]; Smith Aff. at ¶ 5. During these interactions, Plaintiff explained the basis of his request. *Id.* at ¶¶ 14–21. He provided articles and religious excerpts that connected his religious tenets to his three-inch beard. *Id.* He also explained how his religious education expanded during his tenure in the ACFD. *Id.* For example, he became ordained as a minister and founded The Way of Holiness Temple in 2009. *Id.* And, at the time of his request, he pursued a master's degree in divinity and awaited his swearing in as ACFD Chaplin. *Id.*

Neither the ACFD nor City of Atlantic City (collectively, "Defendants") answered Plaintiff's accommodation request for more than a month. During that time, Plaintiff worked in a temporary role in ACFD's Fire Shop and was not permitted to respond to fires. On February 4, 2019, Plaintiff filed an employee complaint, which restated his request for an accommodation

---

¹ *See* 29 C.F.R. § 1910.134(g)(1)(i)(A) ("The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have [f]acial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function . . . .")

and claimed that ACFD had retaliated against him and placed him in a new temporary role. Smith Compl. [Doc. No. 2-15].

On February 15, 2019, ACFD formally denied Plaintiff's request for an accommodation. *Id.* at ¶ 62. Chief Evans denied the request by letter. Evans Letter, Feb. 15, 2019 [Doc. No. 2-18]. In relevant part, the letter stated, "Due to the overwhelming safety concerns for yourself as well as for your fellow firefighters and the public, your request for a religious exemption is denied." *Id.* Plaintiff must comply with ACFD's grooming policy and "report for duty clean shaven." *Id.* Plaintiff alleged that if he reported to work with his beard, ACFD would suspend him without pay and potentially terminate him from the Department. Smith Aff. at ¶¶ 11–12.

## II. PROCEDURAL HISTORY

On February 25, 2019, Plaintiff filed a four-count complaint against the City of Atlantic City, ACFD Chief Scott Evans, and ACFD Deputy Chief Thomas Culleny (collectively, "Defendants"). Compl. [Doc. No. 1]. Count I asserted that Defendants violated Plaintiff's right to freely exercise his religious beliefs under the First Amendment, pursuant to 42 U.S.C. § 1983, and related claims pursuant to the New Jersey Civil Rights Act ("NJCRA"). *Id.* Count II alleged Equal Protection violations under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and related claims pursuant to the NJCRA and the New Jersey State Constitution. Count III asserted Title VII violations, pursuant to the Civil Rights Act of 1964, for failure to provide a religious accommodation and for retaliation. *Id.* Count IV claimed discrimination pursuant to New Jersey Law Against Discrimination ("NJLAD"). *Id.*

Plaintiff then filed the instant application for a TRO and preliminary injunction on February 26, 2019. Plaintiff's Application ("Pl.'s Appl.") [Doc. No. 2]. On March 1, 2019, the

Court held an initial evidentiary hearing. At this hearing, the parties agreed to stay proceedings and scheduled a settlement conference with Magistrate Judge Joel Schneider. The parties then participated in an in-person settlement conference before Judge Schneider on March 7, 2019. The parties informed this Court that settlement discussions had come to an impasse, and on March 18, 2019, the Court continued the evidentiary hearing on Plaintiff's Application.

### A. Evidentiary Hearing

The Court considered arguments and heard testimony at the March 18, 2019 hearing.[2] The parties also submitted additional declarations. [Doc. Nos. 10–11]. For example, Plaintiff submitted an anonymous affidavit, PEOSH Respiratory Protection Standards, and evidence of an alternative mask that could accommodate someone with a beard. Plaintiff's Supplemental Declaration ("Pl.'s Supp. Decl.") [Doc. No. 10]. Meanwhile, Defendants submitted an affidavit from ACFD Chief Scott Evans, a letter from the New Jersey Department of Health to ACFD Deputy Chief Thomas Culleny, and an OSHA decision letter. Defendants' Response to Plaintiff's Application ("Defs.' Resp. to Pl.'s Appl.") [Doc. No. 11].

The Court found the Plaintiff's supplemental submissions largely inadequate. The Court noted Local Rule 7.2, which states that affidavits, declarations, and similar documents referenced in 28 U.S.C. § 1746 are "restricted to statements of fact within the personal knowledge of the signatory." L. Civ. R. 7.2(a). The declarations submitted to the Court, however, offered legal conclusions without a sufficient basis of personal knowledge.

Plaintiff then testified on the record. He discussed his role as an Air Mask Technician. He described ACFD's practice of permitting certain employees not to be fit tested. For example,

---

[2] A final version of the in-court transcript is not available at the time of this writing. The Court therefore presents only an overview of the arguments and relevant testimony provided.

he stated that Chief Evans had not passed an ACFD fit test for more than two years, and only passed a recent ACFD fit test just days before the hearing. Plaintiff also admitted that any amount of facial hair would lead to additional safety risks because of an improper seal.

Chief Evans testified next. He detailed general financial problems confronting Atlantic City. He then described recent changes to the ACFD. For example, ACFD has not hired for several years, and the number of firefighters decreased from nearly 260 firefighters in 2014 to 185 firefighters today. As a result, *all* active members, even Air Mask Technicians, are expected to be fit tested and able to engage in suppression fire in the event of an emergency. Any ACFD member not annually fit tested, he added, was due to an oversight from the large reduction in force. Chief Evans also claimed that he was unaware of any mask that could accommodate facial hair. He explained that even altering a single mask for Plaintiff's accommodation would cause the Department to make extensive changes to all ACFD masks.

Deputy Chief Culleny then testified about how the ACFD responded to the accommodation request. He contacted ACFD's equipment vendor and inquired about the availability of an alternative mask suitable for fire suppression that could accommodate someone with a beard. He asked a second vendor, who worked for another leading company, about the existence of an alternative mask. Both vendors stated that an alternative mask did not exist that comported with state respiratory regulations. Deputy Chief Culleny also contacted Patrick Bost of New Jersey Department of Health and inquired about an exemption from PEOSH regulations for firefighters wishing to wear a beard for religious purposes. *See* Email, Thomas Culleny to Patrick Bost, Jan. 14, 2019 [Doc. No. 11-1]. Mr. Bosh stated that such an exemption is impermissible. *Id.* ("All firefighters using SCBA must follow all the applicable PEOSH regulations.")

After the three witnesses testified, the Court heard final arguments on Plaintiff's Application. Plaintiff's counsel argued that the policy was not facially neutral and was subject to strict scrutiny review. This argument focused on two points. First, the policy's emergency provision permits some facial hair and therefore contains a categorical exemption. Second, ACFD has failed to uniformly fit test its members and therefore permits individual exemptions to its grooming policy. Thus, Plaintiff's counsel argued both exemptions required the Court to impose strict scrutiny review.

The Court did not agree with Plaintiff's arguments and found that he failed to satisfy his burden under the standards for granting a TRO. Specifically, the Court found that Plaintiff did have a sincerely held religious belief and had shown irreparable injury based upon the risk to those beliefs. Plaintiff, however, did not provide sufficient evidence to show a likelihood of success on the merits of his claims. The Court was further guided by several facts that appeared to undercut Plaintiff's claims. First, Plaintiff agreed that the existence of facial hair poses additional safety risks to firefighters. Second, Chief Evans testified that *all* ACFD personnel, including Air Mask Technicians, must be fit tested because they are expected to engage in fire suppression during an emergency. Third, Deputy Chief Culleny testified that two vendors denied the existence of any suitable mask that could accommodate a bearded firefighter. Fourth, Plaintiff's suggestion of an alternative mask, which appears based on an OSHA interpretation letter, does not bind ACFD as a public entity. The Court therefore denied Plaintiff's Application for a TRO.

### III.     LEGAL STANDARD

**A.  Motion for Temporary Restraining Order**

To secure the extraordinary relief of a preliminary injunction or TRO, petitioner must demonstrate that: "(1) [he] is likely to succeed on the merits; (2) denial will result in irreparable harm to [him]; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A petitioner must establish that all four factors favor preliminary relief. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). To obtain a permanent injunction, the petitioner must meet the same standards as for a preliminary injunction, except that the petitioner must show actual success on the merits rather than a likelihood of success. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV.     DISCUSSION

Plaintiff brings several claims against Defendants for allegedly violating his rights under the state and federal constitutions. In Count I, Plaintiff alleges that Defendants violated his right to freely exercise his religion under Section 1983 and the NJCRA. In Count II, Plaintiff alleges that Defendants violated his equal protection rights under Section 1983 and the NJCRA. Because claims under Section 1983 and the NJCRA are analyzed analogously, the Court will treat Plaintiff's Free Exercise and Equal Protection claims together. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011) (interpreting the NJCRA and Section 1983 analogously). And in Counts III and IV, Plaintiff alleges that Defendants discriminated and retaliated against him under Title VII and the NJLAD—claims which the Court also treats together. *See Stallone v. Camden Cty. Tech. Sch. Bd. of Educ.*, No. 12-cv-7356, 2013 WL

5178728, at *3 (D.N.J. Sept. 13, 2013) (citing *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354, 370 (N.J. 2007)).

The following Opinion focuses on the second prong of the TRO test. The Court notes, because Plaintiff claims violations to his religious freedoms, the Court finds he has satisfied the irreparable harm factor of the TRO test.[3] As such, the Court turns to Plaintiff's likelihood of success on the merits. *See ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) ("[I]n First Amendment cases, 'the likelihood of success on the merits will often be the determinative factor.'") The Court concludes that none of Plaintiff's claims appear likely to succeed on the merits.

**A. Plaintiff's First Amendment Claims Are Unlikely to Succeed on the Merits**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. Depending on the nature of the challenged law or government action, a free exercise claim can prompt either rational basis or strict scrutiny review, a determination the Court must first make. *See Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (applying rational basis review to neutral and generally applicable laws that only incidentally burden religious exercise); *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 n.7 (3d Cir. 1999) (applying intermediate scrutiny to a neutral law that favors non-secular motivations over religious ones).

---

[3] The Supreme Court has recognized that violations of First Amendment rights are irreparable injuries. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("[A]ny First Amendment infringement that occurs with each passing day is irreparable.").

The level of scrutiny this Court applies turns on whether the grooming policy is "neutral" and "generally applicable." For example, if the policy is neutral and generally applicable with respect to religion, rational basis review is permitted, even if it has the incidental effect of burdening Plaintiff's religious belief or practice. Under rational basis review, a facially neutral law need only be rationally related to a legitimate government objective. A court will review a facially neutral law with heightened scrutiny, however, if it is not generally applicable.[4] *See Fraternal Order of Police*, 170 F.3d at 365 (applying intermediate scrutiny to a facially neutral law). Indeed, facial neutrality is not dispositive—a district court must "look beyond the text of the [policy] and examine whether [the defendants] enforce[] it on a religion-neutral basis . . . ." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 167 (3d Cir. 2002). As then-Judge Alito explained, neutrality toward religion prohibits government from "deciding that secular motivations are more important than religious motivations." *Fraternal Order of Police*, 170 F.3d at 365.

> Accordingly, in situations where government officials exercise discretion in applying a facially neutral law, so that whether they enforce the law depends on their evaluation of the reasons underlying a violator's conduct, they contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct.

*Tenafly*, 309 F.3d at 165–66. Under intermediate scrutiny, the grooming policy must be substantially related to promoting an important government interest. *See Nat'l Treasury Emps. Union*, 513 U.S. at 465.

---

[4] The Third Circuit makes clear that it will apply intermediate scrutiny, not strict scrutiny, to a facially neutral governmental law that is not generally applicable to religious free exercise. *See Fraternal Order of Police*, 170 F.3d at 365. Under intermediate scrutiny, a policy must be substantially related (rather than narrowly tailored) to promoting an important (rather than compelling) government interest. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465–66 (1995).

Here, Plaintiff's Free Exercise challenge is not likely to succeed on the merits under the rational basis test. ACFD's stated interest in the grooming policy is safety, and courts have long recognized that safety is a legitimate governmental interest. *See Fraternal Order of Police*, 170 F.3d at 366 ("[S]afety is undoubtedly an interest of the greatest important"). The grooming policy is also rationally related to safety for several obvious reasons. First, Plaintiff admits that facial hair creates additional safety risks for firefighters by inhibiting a mask's seal. The testimony indicates that the harm is two-fold. On one hand, toxic fumes and smoke may enter an ill-fitting mask. On the other, oxygen supplies may more quickly drain with an ill-fitting mask. Second, the actual grooming policy mentions the possibility of facial hair interfering with such seal. For example, Paragraph 6 states, "Facial hair of any type shall not interfere with the seal of SCBA face piece." O# 0303. The Court therefore finds that the grooming policy *is* rationally related to ACFD's legitimate interest in safety. *See also Valdes v. New Jersey*, 313 F. App'x 499, 501 (3d Cir. 2008) (upholding a facially neutral no-beard policy under rational basis review).

Plaintiff next argues that the Free Exercise claim is likely to succeed on the merits because the grooming policy is not generally applicable. Plaintiff states that the policy is not generally applicable because it contains both categorical and individualized exemptions. Specifically, he submits that the emergency provision permitting ACFD members to respond to emergencies without shaving shows that the Department is favoring secular motivations over religious ones. Relatedly, he asserts that ACFD's failure to fit test everyone shows that the Department is using its discretion to burden religious practices. Plaintiff therefore argues that the Court must apply strict scrutiny.

Plaintiff's focus on the emergency provision does not support an argument for heightened scrutiny. Most obviously, this Court notes the underlying rationale for courts "looking beyond" a seemingly neutral regulation that burdens religious exercise is to probe whether the government is deciding that secular motivations are more important than religious ones. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993) (describing how "categories of selection are of paramount concern"). The Third Circuit has affirmed this underlying policy interest and held categorical exemptions evoking governmental favoritism to a heightened standard. For example, the Third Circuit has identified categorical exemptions for medical conditions as an obvious example of when the government prefers secular motivations over religious ones. In *Tenafly*, the Third Circuit summarized other instances of categorical exemptions that warranted additional scrutiny—

> [T]he exemptions for secularly motivated killings in *Lukumi* indicated that the city was discriminating against Santeria animal sacrifice, . . . the medical exemption in *Fraternal Order of Police* indicated that the police department was discriminating against religiously motivated requests to grow beards, . . . [and] the Borough's invocation of the often-dormant Ordinance 691 against conduct motivated by Orthodox Jewish beliefs is sufficiently suggestive of discriminatory intent . . . .

*Tenafly*, 309 F.3d at 168. This Court must therefore consider whether the emergency language within the grooming policy is tantamount to a categorical exemption.

Plaintiff's attempt to characterize the emergency provision as a "categorical exemption" is simply unconvincing. First, the emergency provision is not one granted for medical conditions and appears far different than those categories discussed by the Third Circuit in *Tenafly*. For example, the animal cruelty ordinance in *Lukimi*, even though couched as an "emergency ordinance," specifically exempted state-licensed activities and therefore showed that the government favored secular animal harvesting, such as harvesting for public meat consumption,

to animal sacrifice for religious worship. More broadly, the emergency provision here does not appear to allow ACFD to make any "value judgment" that favors or disfavors religious conduct. *Hialeah*, 508 U.S. at 537–38. Instead, the provision waives the rule only in the unplanned event of an emergency. The very nature of this kind of emergency, one confronting an understaffed fire department, seems to undercut Plaintiff's argument that ACFD is using a seemingly neutral policy to prop up a regime disfavoring religious exercise. Plaintiff seems to say that any instance of non-compliance, whether because of an emergency provision or incompetence,[5] shows that the Department is engaging in systemic favoritism.

Plaintiff next argues that heightened scrutiny is appropriate because of individualized exemptions to the mask fit test. These kinds of exemptions, much like the categorical exemptions above, trigger heightened scrutiny if their application reveals a governmental preference for secular motivations. *See Tenafly*, 309 F.3d at 168 (discussing how "selective, discretionary application" of a policy undercuts its neutrality). To support this claim, Plaintiff offers the following allegations as evidence: both Chief Evans and Plaintiff did not undergo an ACFD fit test for at least two years. Thus, Plaintiff claims that ACFD is only now enforcing the rule against Plaintiff, presumably to burden his religious free exercise.

Plaintiff's argument is unconvincing for several reasons. First, Plaintiff admits that he is the person, or one of the select people, tasked with reporting ACFD members who do not pass

---

[5] Plaintiff makes a similar argument that the grooming policy categorically exempted Air Mask Technicians. He claims there is such an exemption because *he* was not fit tested for three years while serving as Air Mask Technician. Again, the Court finds this argument unconvincing largely because Plaintiff offers a different reason behind his non-compliance, namely incompetence. For example, Plaintiff testified that, even though he was chiefly responsible for emailing senior ACFD members the names of all ACFD members who did not complete an annual fit test, he never reported his name. The Court struggles to understand how *his* decision not to comply shows a *governmental* system that favors secular motivations over religious ones.

the fit test. Plaintiff also admits that he never included himself in any of the reports discussing fit-test compliance. As such, Plaintiff's argument of non-secular favoritism is besmirched by his admitted failure to include himself in the reports. Next, the other instance of fit-test non-compliance appears to be rooted in general incompetence, not a system of governmental favoritism undercutting religious practice. Again, the Court may only consider evidence presented to it. Plaintiff did not provide testimony that suggested the non-compliance stemmed from ACFD devaluing religious exercise. Instead, Chief Evans testified that ACFD's recent and robust reduction in force has left the Department understaffed. Based on his testimony, the lack of fit-test compliance, the extent of which remains unclear to the Court, appears greatly attenuated from any governmental favoritism. The Court therefore finds that Plaintiff's claim for heightened scrutiny is unlikely to succeed on the merits.

Finally, and simply for the sake of argument, Plaintiff's First Amendment claim is unlikely to succeed on the merits even under heightened scrutiny.[6] Under intermediate scrutiny review, the highest level of scrutiny the Court will apply to governmental entity with a facially neutral law, ACFD must have a compelling interest that is substantially related to the grooming policy. The first prong is clearly satisfied because the government's interest in safety is clearly compelling. However, Plaintiff is unlikely to succeed on the substantial relatedness prong. Most obviously, the record shows that the existence of facial hair creates added dangers to firefighters wearing masks. Chief Evans also testified that *all* members of the ACFD are expected to be

---

[6] Plaintiff's argument for strict scrutiny is fundamentally misplaced. As explained, ACFD is a governmental entity, and the Third Circuit insists that a governmental law that is facially neutral may only reach intermediate scrutiny. *See Fraternal Order of Police*, 170 F.3d at 366 n.7.

ready to enter a fire. Finally, Deputy Chief Culleny testified that ACFD's mask vendor and another leading vendor did not have a mask that could safely accommodate a bearded firefighter.

Even if the Court accepts Plaintiff's argument for heightened scrutiny, the First Amendment claim is not likely to succeed on the merits. And, as stated, without additional evidence, the grooming policy is subject to rational basis review and likely fails.

### B. Plaintiff's Equal Protection Claim Is Unlikely to Succeed on the Merits

The Court next considers Plaintiff's Equal Protection claims. Plaintiff argues that he is likely to succeed on the merits of his Equal Protection claim because the ACFD's "actions both jeopardize [his] fundamental right—to exercise his religion—and categorizes him on the basis of an inherently suspect characteristic—his religion." Pl.'s Br. at 15.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As the Third Circuit has stated, the Equal Protection inquiry is two-fold: (1) whether the ACFD "intentionally discriminates against a reasonably identifiable group," and (2) if so, "whether that intentional discrimination is nonetheless legally justified." *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015).

When, as here, a policy does not classify on its face or seems to do so legitimately, a plaintiff can show intentional discrimination by providing evidence that defendant applies the law differently to his religious group. *Hassan*, 804 F.3d at 294 (citing cases). Relatedly, a plaintiff may also show intentional discrimination by providing evidence that defendant applies the law differently to similarly situated people outside of Plaintiff's protected class. *Id.* Ultimately, a plaintiff must show an "intentional or purposeful discriminatory

purpose, not mere unequal treatment or adverse effect." *See Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 469 F. App'x 99, 103 (3d Cir. 2012) (citing *Snowden v. Hughes*, 321 U.S. 1, 8, (1944)). *See also Wayte v. United States*, 470 U.S. 598, 610 (1985) (a plaintiff must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects . . . .")

Here, Plaintiff's Equal Protection claims are unlikely to succeed on the merits because Plaintiff provides no evidence that he was treated differently than members of an unprotected class. For example, Plaintiff does not provide a single name of an ACFD member permitted to wear a beard for a non-religious purpose. Relatedly, Chief Evans testified that the grooming policy required *all* members to be clean shaven, regardless of religion. At best, Plaintiff merely suggests that the ACFD has failed to have all of its members comply with its annual fit test. Despite Plaintiff's reliance on this point, he has *not shown* that any of these un-tested members wore beards; nor has he shown that ACFD permitted the wearing of the beards for non-religious purposes. Plaintiff's Equal Protection claim is therefore unlikely to succeed on the merits.

### C. Plaintiff's Title VII Claim Is Unlikely to Succeed on the Merits

Plaintiff next claims that Defendants violated his rights under Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff claims that Defendants failed to accommodate his reasonable request for a religious accommodation that would permit his wearing of a bear and retaliated against him based on that request. The Court finds that both claims are unlikely to succeed on the merits.

1. **Plaintiff's failure to accommodate claim**

Plaintiff presents two arguments supporting his accommodation claim: (1) his position as an Air Mask Technician did not require the wearing of a mask, and (2) even if it did, ACFD could provide him a different mask that would safely contain his beard.

Title VII of the 1964 Civil Rights Act prohibits religious discrimination and requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in "undue hardship" to the employer. 42 U.S.C. §§ 2000e-2(a)(1),[7] 2000e(j)[8] (1982). To establish a prima facie case, an employee must show: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed the employer of the belief; and (3) he was disciplined for failing to comply with the conflicting requirement. *See Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 133–34 (3d Cir. 1986). If the employee establishes a prima facie case, the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would cause an undue burden. *Id.* at 134. An accommodation is said to cause an undue burden wherever it results in "more than a de minimis cost" to the employer. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 92 (1997). A cost is more than de minimis if it undercuts an employer's efficiency. *See id.* at 84.

Here, the evidence suggests that Plaintiff has made a prima facie case under Title VII. As explained, the Court determined that Plaintiff has a sincerely held religious belief. Plaintiff is a

---

[7] It is an unlawful employment practice to "discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . religion." 42 U.S.C. § 2000e-2(a)(1) (1982).

[8] "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

self-avowed "born again" Christian and ordained minister.  He is also a founding member of his Church.  In addition, the record shows that Plaintiff informed both ACFD Deputy Chief and the City of Atlantic City Solicitor of the conflict between the grooming policy and his religious beliefs.  Finally, ACFD denied his accommodation request, and Chief Evans' instructed him to report to duty "clean shaven."  The Court is therefore satisfied with Plaintiff's prima facie case, and the burden shifts to Defendants.

Plaintiff's Title VII claim is unlikely to succeed on the merits because Defendants show that the accommodation request creates an undue burden.  Plaintiff first suggests that his accommodation is reasonable because his position as Air Mask Technician does not require him to wear a mask, and thus, his beard does not impose safety risks on ACFD.  As explained above, this argument is not supported by the evidence.  Thus, if ACFD grants Plaintiff's accommodation, ACFD faces additional safety risks as Plaintiff will be unable to engage in fire suppression, and the Department is already understaffed.  An undue burden therefore exists and makes Plaintiff's first argument for an accommodation untenable.

Defendants also show that an undue burden is likely to result if ACFD permitted Plaintiff to wear a different mask. The Court found Plaintiff's alternative mask argument especially weak.  First, Defendants testified that ACFD could not find an alternative mask that met the Department's safety standards.  Deputy Chief Culleny testified that two vendors stated that such a mask did not exist.  Defendants have also testified that, even if one does exist in the general marketplace, such mask would require all masks in the Department to undergo additional modifications.  Relatedly, Plaintiff's suggestion of an alternative mask appears to come from an OSHA opinion letter.  This interpretation, however, does not bind ACFD as a governmental

entity. Taken collectively, the accommodation appears to be far from reasonable. The Court therefore finds that Plaintiff's Title VII claim is unlikely to succeed on the merits.

### 2. Plaintiff's retaliation claim

Plaintiff's Title VII retaliation claim fares no better. Courts analyze retaliation claims under a three-step burden shifting framework. First, the plaintiff must make prima facie showing that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). If the plaintiff makes this showing, the burden shifts to the employer to advance a "legitimate, non-retaliatory reason" for its conduct. *Id.* (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997)). And if it does, the burden shifts back to the plaintiff to "convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* at 342 (quoting *Krouse*, 126 F.3d at 500–01). "[T]o prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action 'but for' her protected activity." *See Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 96 (3d Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)).

Here, Plaintiff claims that the ACFD retaliated against him because after he applied for a religious accommodation that would exempt him from the ACFD's grooming policy, the ACFD told Plaintiff "not to respond to fire emergencies, a clear adverse employment action." (Pl.'s Br. at 14). Plaintiff also argues that "he will be disciplined if he appears for duty with his beard." *Id.*

Even assuming that Plaintiff satisfies his prima facie burden, Plaintiff's retaliation claim is not likely to succeed on the merits because Plaintiff offers no evidence to show that the ACFD's proffered explanation for its conduct is false or that retaliation was the real reason for Plaintiff's temporary position. As the Court has explained, the ACFD's decision to enforce its grooming policy and to temporarily prevent Plaintiff from responding to fires is based on significant safety interests. Plaintiff, however, provides no evidence to suggest that this explanation is false. Having produced no evidence to carry his step-three burden, Plaintiff has not shown that he is likely to succeed on the merits of his Title VII retaliation claim.

## V. CONCLUSION

For the reasons articulated above, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order ("TRO").

Dated: 3/22/2019                                                                                    s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge