| | |
|---|---|
| ALEXANDER SMITH<br><br>                              Plaintiff,<br><br>v.<br><br>CITY OF ATLANTIC CITY, SCOTT EVANS, as Chief of the Atlantic City Fire Department, and THOMAS J. CULLENY JR., Deputy Chief of the Atlantic City Fire Department<br><br>                              Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>No.:  19-CV-L-6865 |

===============================================================
**BRIEF IN SUPPORT OF SUMMARY JUDGMENT**
**SUBMITTED BY DEFENDANTS**
**CITY OF ATLANTIC CITY, SCOTT EVANS AND THOMAS J. CULLENY JR.**
===============================================================

**CLEARY GIACOBBE ALFIERI JACOBS, LLC**
Nicholas DelGaudio, Esq.
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
**Attorneys for Defendants City of Atlantic City, Scott Evans and Thomas J. Culleny Jr.**

*Nicholas DelGaudio, Esq.,*
*Of Counsel and On the Brief*

1

<u>**TABLE OF CONTENTS**</u>

<u>TABLE OF AUTHORITIES</u>……………………………………….....………..………….…..3

<u>PRELIMINARY STATEMENT</u>............................................................................7

<u>LEGAL ARGUMENT</u>.......................................................................................10

I.  <u>Defendants City of Atlantic City, Chief Evans and Deputy Chief Culleny are entitled to summary judgment inasmuch as there exists no genuine issue of material fact</u>…..............10

II.  <u>Count One must be dismissed as Plaintiff cannot establish a violation of his religious freedoms</u>...........................................................................................................11

III.  <u>Count Two must be dismissed as Plaintiff cannot establish a violation of his equal protection rights</u>.............................................................................................................16

IV.  <u>Count Three must be dismissed as Plaintiff cannot establish that he was discriminated or retaliated against because of his religion</u>................................................................17
        1.  Plaintiff's accommodation claims must be dismissed.....................................18
        2.  Plaintiff's Title VII retaliation claims must be dismissed...............................26

V.  <u>Count Four must be dismissed as Plaintiff cannot establish that he was discriminated or retaliated against because of his religion</u>................................................................27
        1.  Plaintiff's NJLAD discrimination/accommodation claims must be dismissed...........27
        2.  Plaintiff's NJLAD retaliation claims must be dismissed................................29

VI.  <u>No punitive damages can be awarded for Plaintiff's § 1983 and NJCRA claims</u>.................31

VII.  <u>Alternatively, the claims against individual defendants Evans and Culleny must be dismissed</u>...........................................................................................................31

<u>CONCLUSION</u>...............................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986)..................................................................................................10

Aron v. Quest Diagnostics Inc.,
174 F. App'x 82 (3d Cir. 2006)........................................................................................25

Baltgalvis v. Newport News Shipbuilding, Inc.,
15 F. App'x 172 (4th Cir. 2001).........................................................................19, 23-24

Bey v. City of New York,
999 F.3d 157 (2d Cir. 2021)........................................................................................15, 23

Bhatia v. Chevron U.S.A. Inc.,
734 F.2d 1382 (9th Cir.1984)...............................................................................19, 23, 24

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..........................................................................................................10

Cicchetti v. Morris County Sheriff's Office,
194 N.J. 563 (2008).....................................................................................................32-33

City of Newport v. Fact Concerts, Inc.,
453 U.S. 247 (1981)..........................................................................................................31

City of Vineland and Ibew Local 210,
41 NJPER ¶ 80, 2014 WL 7495333 (2014).......................................................................29

Dici v. Com. of Pa.,
91 F.3d 542 (3d Cir. 1996)................................................................................................31

E.E.O.C. v. GEO Grp., Inc.,
616 F.3d 265 (3d Cir. 2010).......................................................................................18, 24

Employment Division v. Smith,
494 U.S. 872 (1990)..........................................................................................................12

Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,
170 F.3d 359 (3d Cir. 1999)...................................................................................12, 13, 15

Fulton v. City of Philadelphia,
141 S. Ct. 1868 (2021)......................................................................................................12

Gardner v. New Jersey State Police,
No. CV 15-8982 (RBK/AMD), 2016 WL 6138240 (D.N.J. Oct. 21, 2016)................................31

Hamilton v. City of New York,
563 F. Supp. 3d 42 (E.D.N.Y. 2021).............................................................................15, 16, 23

Hassan v. City of New York,
804 F.3d 277 (3d Cir. 2015)........................................................................................................16

Hurley v. Atlantic City Police Dep't.,
174 F.3d 95 (3d Cir.1999)...........................................................................................................33

Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.,
469 F. App'x 99 (3d Cir. 2012)....................................................................................................17

Kachmar v. SunGard Data Sys., Inc.,
109 F.3d 173 (3d Cir. 1997).........................................................................................................31

Kohn v. AT&T Corp.,
58 F. Supp. 2d 393 (D.N.J. 1999)................................................................................................31

Krouse v. Am. Sterilizer Co.,
126 F.3d 494 (3d Cir. 1997).........................................................................................................26

Leang v. Jersey City Bd. of Educ.,
198 N.J. 557 (2009)......................................................................................................................33

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986).....................................................................................................................10

Miller v. Port Auth. of New York & New Jersey,
351 F. Supp. 3d 762 (D.N.J. 2018)..............................................................................................24

Moore v. City of Phila.,
461 F.3d 331 (3d Cir. 2006).........................................................................................................26

Nuness v. Simon & Schuster, Inc,
221 F. Supp. 3d 596 (D.N.J. 2016)..............................................................................................30

Protos v. Volkswagen of Am., Inc.,
797 F.2d 129 (3d Cir. 1986).........................................................................................................18

Romano v. Brown & Williamson Tobacco Corp.,
665 A.2d 1139 (App. Div. 1995)..................................................................................................30

Sanchez v. SunGard Availability Servs. LP,
362 Fed. Appx. 283 (3d Cir. 2010)....................................................................30

Schaad v. Ocean Grove Camp Meeting Ass'n of United Methodist Church,
72 N.J. 237 (1977)............................................................................................11

Seaworth v. Pearson,
203 F.3d 1056 (8th Cir. 2000)......................................................................19, 23

Snowden v. Hughes,
321 U.S. 1 (1944)...............................................................................................17

State v. Celmer,
80 N.J. 405 (1979)............................................................................................12

Tarr v. Ciasulli,
181 N.J. 70 (2004).......................................................................................32-34

Township of Maplewood,
23 NJPER ¶ 28007, 1996 WL 34548871 (1996)..............................................29

Trans World Airlines, Inc. v. Hardison,
432 U.S. 63 (1997)............................................................................................18

United States v. Board of Educ.,
911 F.2d 882 (3rd Cir.1990)........................................................................18-19, 23

United States v. Nat'l Treasury Emps. Union,
513 U.S. 454 (1995)......................................................................................13, 15

Wayte v. United States,
470 U.S. 598 (1985)...........................................................................................17

Webb v. City of Philadelphia,
562 F.3d 256 (3d Cir. 2009)...............................................................................18

Weber v. Leaseway Dedicated Logistics, Inc.,
166 F.3d 1223 (10th Cir. 1999).....................................................................19, 24

Young v. Hobart W. Grp.,
897 A.2d 1063 (App. Div. 2005).........................................................................30

**Statutes, Rules & Regulations**
29 § C.F.R. 1910.134........................................................................................14

42 U.S.C. §§ 2000e..........................................................................................18

F.R.C.P. 56........................................................................................................................10

N.J.A.C. 12:100–10.10....................................................................................................14

N.J.S.A. 10:5-5................................................................................................................32

N.J.S.A. 10:5-12....................................................................................................27-30, 32

U.S. Const. amend. I.......................................................................................................12

U.S. Const. amend. XIV.................................................................................................16

## **PRELIMINARY STATEMENT**

Plaintiff Alexander Smith, a firefighter for the City of Atlantic City, brings this lawsuit against the City, Fire Chief Scott Evans and Deputy Chief Thomas J. Culleny Jr. ("Defendants") under the U.S. and State Constitutions, Title VII and the New Jersey Law Against Discrimination ("NJLAD"), alleging the Defendants engaged in discriminatory and unconstitutional treatment against him on the basis of his religion by not granting him a religious accommodation allowing him to wear a three-inch beard as an expression of his religious beliefs. There are no facts in dispute which would preclude an entry of summary judgment in Defendants' favor.

Plaintiff has been a City firefighter since 2004.  In 2019, he made a request for an exemption to the Fire Department's Grooming Policy to allow him to wear a beard, which was denied by the City because of safety concerns and binding state and federal regulations which prohibit the wearing of an air mask by firefighters with facial hair that comes between the sealing surface of the facepiece and the face.  The City applies their Grooming Policy to all firefighters with no exemptions permitted – religious, medical, or otherwise.  The City has also not hesitated to grant religious accommodations when possible, granting a separate request made by Plaintiff for an alternative means of signing in and signing out of work that did not involve him having to use the City's hand-scan system, and assigning Plaintiff the Air Mask Technician duties in 2015 to better accommodate his conducting of religious services.

Before denying Plaintiff's request to wear a beard, the City explored whether there were any exemptions permitted to the state regulations which would allow a firefighter with a beard to wear an air mask by contacting the agency responsible for the adoption and implementation of

the regulations, and the agency confirmed that there were no such exemptions allowed.  The City also contacted its air mask vendor and a separate air mask vendor to inquire as to whether there was an alternative air mask for firefighters that allows for the wearing of a beard in a safe manner, but found that there were no such masks available.

Plaintiff's Title VII and NJLAD claims for failure to accommodate his request for a religious accommodation to wear a beard both fail because granting Plaintiff's request would result in an undue burden or undue hardship to the City.  An accommodation to allow Plaintiff to use an air mask while also wearing a beard would cause an undue hardship because: 1) the accommodation is prohibited by binding state and federal regulations; and 2) the accommodation would cause safety issues.  An accommodation to allow Plaintiff to wear a beard and not wear an air mask would essentially make Plaintiff unable to perform the duties of a firefighter, creating additional safety risks for a Department that has seen its staffing levels decrease over the years. Even when performing Air Mask Technician duties, Plaintiff is subject to being called when needed into rescue, fire suppression, and/or any other hazardous duties that would require the use of an SCBA, whether it be when he is at the scene of a fire as part of his Air Mask Technician responsibilities or when he is called in from the Fire Shop or from home to engage in such SCBA-required duties in emergency situations.

 Plaintiff's Equal Protection claims under the U.S. and New Jersey Constitutions fail because Plaintiff was not treated differently than anyone else in the Fire Department with respect to wearing a beard, and has provided no evidence to the contrary.  The Department's Grooming Policy and the Department in practice do not permit _any_ Department employee an individualized exemption to wear a beard for any reason, religious or otherwise, and a similar request for a

shaving exemption for a medical reason was also denied.  Plaintiff's Equal Protection claims therefore must fail.

Plaintiff's Free Exercise claims under the U.S. and New Jersey Constitutions also fail. The Department's Grooming Policy is both facially neutral and generally applicable because it imposes the same limitations on every comparable firefighter, and does not provide for any categorical exemptions to the no-beard rule; thus, rational basis review would apply.  Here, the no-beard policy is clearly rationally related to the legitimate government objectives of both safety and following binding state and federal regulations.  Further, even if the Court applied heightened scrutiny, the Grooming Policy would survive because the government's interest in safety and in following binding State and federal regulations is compelling, and these interests are directly related to the Grooming Policy's prohibition on any firefighter wearing a beard that would interfere with the seal of the air mask.

Therefore, because there are no material facts in dispute and these facts establish that Plaintiff cannot prove any of the claims of the Complaint as against Defendants as a matter of law, summary judgment should be granted in Defendants' favor, dismissing the claims with prejudice.

# LEGAL ARGUMENT

## I.  Defendants City of Atlantic City, Chief Scott Evans and Deputy Chief Thomas J. Culleny are entitled to summary judgment inasmuch as there exists no genuine issue of material fact.

The standard by which a motion for summary judgment must be measured is well-settled and firmly established.  A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.  Once the moving party satisfies this initial burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In short, plaintiff is obliged to provide the grounds for his entitlement to relief.  Such grounds are more than labels and conclusions, formulaic or mechanical recitation of the elements or speculative facts.  Applying these legal precepts to the instant case, and in accordance with the

arguments below, there exists no genuine issue of material fact that would preclude entry of summary judgment in favor of Defendants City of Atlantic City, Chief Scott Evans and Deputy Chief Culleny.

## II.    Count One must be dismissed as Plaintiff cannot establish a violation of his religious freedoms.

Plaintiff's Complaint contains four (4) counts. **(Statement of Material Facts ["SOMF"] #1)** Count One is titled "For Violations of Religious Freedoms Under the First Amendment, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act and Article I, § 3 of the New Jersey State Constitution." Count Two is titled "For Violations of Equal Protection Under the Fourteenth Amendment, 42 U.S.C. § 1983, the New Jersey Civil Rights Act and Article I, § 1, of the New Jersey State Constitution." Count Three is titled "For Violations of Title VII of the Civil Rights Act of 1964." Count Four is titled "For Violations of the New Jersey Law Against Discrimination." **(SOMF #2)**

Count One of the Complaint alleges that the "ACFD's broad-reaching no beard policy unreasonably interferes with the religious beliefs of the Plaintiff," that the "Defendants' conduct...targets religious exercise and violates the federal and New Jersey State constitutional rights to the free exercise of religion," and that "[n]o legitimate governmental interest justifies the ACFD's no-beard policy." **(SOMF #3)**

Article I, paragraph 3 of the New Jersey State Constitution is the State's counterpart to the Free Exercise Clause of the First Amendment and, therefore, both claims will be addressed together. See Schaad v. Ocean Grove Camp Meeting Ass'n of United Methodist Church, 72 N.J. 237, 266 (1977) ("In our judgment, the letter and spirit of these New Jersey constitutional provisions, taken together, are substantially of the same purpose, intent and effect

as the religious guaranties of the First Amendment"), overruled on other grounds by State v. Celmer, 80 N.J. 405 (1979).

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law...prohibiting the free exercise [of religion]." U.S. Const. amend. I. However, free exercise does not exempt religious adherents from neutral laws of general applicability, even if such laws incidentally impose substantial burdens on the practice of religion. Employment Division v. Smith, 494 U.S. 872, 879 (1990).

Typically, a challenged law or government action will be reviewed under either a rational basis standard, intermediate scrutiny standard or strict scrutiny standard, turning on whether the policy or practice is "neutral" and "generally applicable." See Emp't Div. v. Smith, 494 U.S. 872 (1990) (applying rational basis review to neutral and generally applicable laws that only incidentally burden religious exercise). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1877 (2021). Neutrality toward religion prohibits government from "deciding that secular motivations are more important than religious motivations." Fraternal Order of Police Newark Lodge No. 12 v. City of Newark, 170 F.3d 359, 365 (3d Cir. 1999). A law is considered "not generally applicable" if it has a system of individualized and discretionary exemptions that allow the government to consider, and grant an exemption based on, a person's particular reasons and circumstances for deviating from the law. Id.

Thus, the level of scrutiny to be applied turns on whether the Grooming Policy is "neutral" and "generally applicable." If the policy is considered both neutral and generally applicable with respect to religion, rational basis review is permitted, even if it has the incidental

12

effect of burdening Plaintiff's religious belief or practice. Under rational basis review, a facially neutral law need only be rationally related to a legitimate government objective. A governmental law that is facially neutral and not generally applicable, can only reach intermediate scrutiny and not strict scrutiny. <u>Fraternal Order of Police Newark Lodge No. 12 v. City of Newark</u>, 170 F.3d 359 (3d Cir. 1999). Under intermediate scrutiny, the Grooming Policy must be substantially related to promoting an important government interest. See <u>United States v. Nat'l Treasury Emps. Union</u>, 513 U.S. 454, 465 (1995).

Here, the ACFD's Grooming Policy is both facially neutral and generally applicable because it imposes the same limitations on every comparable firefighter, and does not provide for any categorical exemptions to the no-beard rule. The Grooming Policy provides in relevant part:

> 6. Beards and goatees of any type are specifically prohibited. In no case shall facial hair, including stubble, inhibit the seal of the air mask's face piece. Facial hair of any type shall not interfere with the seal of SCBA face piece. No hair is permitted below the lower lip.

**(SOMF #27)** The ACFD does not allow any individualized categorical exemptions to allow Department employees to wear a beard for any reasons, religious or otherwise. **(SOMF #28)** In fact, a similar request for a shaving exemption made by a firefighter for a non-religious, medical reason was also denied. **(SOMF #30)** Because the policy is both facially neutral and generally applicable, the rational basis test would apply.

Under rational basis review, a facially neutral law need only be rationally related to a legitimate government objective. Here, the City has a legitimate government objective in its firefighters not wearing beards for at least two reasons: (1) <u>for safety reasons</u>: as even Plaintiff and his expert have admitted, facial hair creates additional safety risks for firefighters by creating

leaks in the seal of the tight-fitting respirator mask, leading to a reduction in air tank time, which is a danger for firefighters **(SOMF #36)**;  and (2) <u>in order to follow binding State and federal regulations</u> – the ACFD cannot permit its firefighters to have beards because they are prohibited by these binding regulations from wearing an air mask if any facial hair would come between the sealing surface of the mask and the wearer's face.

ACFD personnel wear a self-contained breathing apparatus ("SCBA") air mask when engaging in activities necessitating the use of an air mask, which includes but is not limited to fire suppression, search and rescue activities, and entering other hazardous atmospheres. **(SOMF # 13)**

The Grooming Standards are set in accordance with state and federal regulations which require that the ACFD not permit respirators with tight-fitting facepieces be worn by employees who have facial hair that comes between the sealing surface of the facepiece and the face. The New Jersey Department of Health's Public Employees Occupational Safety and Health ("PEOSH") regulations incorporate by reference the federal Occupational Safety and Health Administration ("OSHA") regulations pertaining to respirators found at 29 § <u>C.F.R.</u> 1910.134. <u>See</u> <u>N.J.A.C.</u> 12:100–10.10.  These regulations provide the following:

> (i) The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:
>> (A) Facial hair that comes between the sealing surface of the facepiece and the face...;

29 <u>C.F.R.</u> § 1910.134(g).  The Grooming Policy itself mentions the possibility of facial hair interfering with such seal ("[f]acial hair of any type shall not interfere with the seal of SCBA face piece").  Such respirators are required to be worn whenever a firefighter is entering an "immediately dangerous to life or health" ("IDLH") atmosphere. 29 <u>C.F.R.</u> § 1910.134(d) and (g).  Deputy Chief Culleny contacted PEOSH to inquire as to whether there were any exemptions

from this regulation for respirator wearers who wish to wear a beard for religious reasons and a representative from PEOSH responded, confirming that there are no accommodations that can be made for firefighters that would allow them to wear an SCBA or any tight-fitting respirator with a beard. **(SOMF #34-35)**

It was on these grounds that a similar case filed in New York City involving the Fire Department of New York was dismissed last year by the Court of Appeals for the Second Circuit. See Bey v. City of New York, 999 F.3d 157 (2d Cir. 2021); see also Hamilton v. City of New York, 563 F. Supp. 3d 42 (E.D.N.Y. 2021).  Courts have also long found that safety is a compelling, legitimate governmental interest. See Fraternal Order of Police, 170 F.3d at 366 ("safety is undoubtedly an interest of the greatest importance").

For these reasons, the ACFD Grooming Policy is rationally related to ACFD's legitimate interest in safety and in following binding State and federal regulations.

Further, even if the Court were to apply the heightened standard of intermediate scrutiny should it determine that the policy is not generally applicable[1] – which it is – the ACFD Grooming Policy would survive such review.  Under intermediate scrutiny review, the highest level of scrutiny the Court will apply to a governmental entity with a facially neutral law, ACFD must have a compelling interest that is substantially related to the Grooming Policy. See United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 465 (1995).  The government's interest in safety and in following binding State and federal regulations is clearly compelling, and these interests are directly related to the Grooming Policy's prohibition on any firefighter wearing a beard that would interfere with the seal of the air mask.  See Fraternal Order of Police, 170 F.3d at 366 ("safety is undoubtedly an interest of the greatest importance"); see also Hamilton v. City

---

[1]  There is no basis for the application of strict scrutiny as the Third Circuit insists that a governmental law that is facially neutral may only reach intermediate scrutiny. See Fraternal Order of Police, 170 F.3d at 366 n.7.

of New York, 563 F. Supp. 3d 42 (E.D.N.Y. 2021) (FDNY enforcing its grooming policy to comply with binding regulations is inherently a legitimate interest).

Therefore, the ACFD's Grooming Policy as applied to Plaintiff's desire to wear a beard survives review under both rational basis and intermediate scrutiny standards, Plaintiff's Free Exercise claims under the First Amendment and the New Jersey Constitution must fail, and Count One of the Complaint must be dismissed with prejudice.

## III.   Count Two must be dismissed as Plaintiff cannot establish a violation of his equal protection rights.

Count Two of the Complaint alleges that the "Defendants have discriminated against Plaintiff in violation of the Fourteenth Amendment of the United States Constitution and the New Jersey Civil Rights Act and Article I, section 1 of the New Jersey State Constitution." **(SOMF #4)**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection inquiry is two-fold: (1) whether the governmental employer "intentionally discriminates against a reasonably identifiable group," and (2) if so, "whether that intentional discrimination is nonetheless legally justified." Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015).  When a policy does not discriminate on its face, a plaintiff can show intentional discrimination by providing evidence that defendant applies the law differently to his religious group, or to similarly situated people outside of Plaintiff's protected group. Hassan, 804 F.3d at 294.  Relatedly, a plaintiff may also show intentional discrimination by providing evidence that defendant applies the law differently to similarly situated people outside of Plaintiff's protected class. Id.  Ultimately, a plaintiff must show an

"intentional or purposeful discriminatory purpose, not mere unequal treatment or adverse effect."
See Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 469 F. App'x 99, 103 (3d
Cir. 2012) (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)). See also Wayte v. United States,
470 U.S. 598, 610 (1985) (a plaintiff must show that the "decisionmaker . . . selected or
reaffirmed a particular course of action at least in part because of, not merely in spite of, its
adverse effects.")

Here, Plaintiff's Equal Protection claims fail because Plaintiff was not treated differently
than anyone else in the Fire Department with respect to wearing a beard, and has provided no
evidence to the contrary.  The Department's Grooming Policy and the Department in practice do
not permit *any* Department employee an individualized exemption to wear a beard for any
reason, religious or otherwise. **(SOMF #28)**   In fact, a similar request for a shaving exemption
made by a firefighter for a non-religious, medical reason was also denied. **(SOMF #30)**  There
has also been no evidence of "intentional or purposeful discriminatory purpose" on the part of
Defendants; in fact, Plaintiff was granted a separate religious accommodation request in 2019 to
not use the hand scan system to sign in and out of work each day and Plaintiff's switch into
performing Air Mask Technician duties in 2015 was by request of Plaintiff to better
accommodate his religious services schedule. **(SOMF #39, 40)**

Therefore, Plaintiff's Equal Protection claims under the Fourteenth Amendment and the
New Jersey Constitution must fail and Count Two of the Complaint must be dismissed with
prejudice.

## IV.   Count Three must be dismissed as Plaintiff cannot establish that he was discriminated or retaliated against because of his religion.

Count Three of the Complaint alleges violations of Title VII of the Civil Rights Act of
1964 because "Defendants have discriminated against Plaintiff Smith...[by] [f]ailing to provide

an adequate religious accommodation that allows the growth of a reasonable length beard; and [r]etaliating against Plaintiff for exercising his right to practice his religion by wearing a moderate length beard." **(SOMF #5)**

      **1.**      **Plaintiff's accommodation claims must be dismissed.**

Title VII prohibits religious discrimination and requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in "undue hardship" to the employer. 42 U.S.C. §§ 2000e-2(a)(1),7 2000e(j)8.   To establish a prima facie case, an employee must show: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed the employer of the belief; and (3) he was disciplined for failing to comply with the conflicting requirement. Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 133–34 (3d Cir. 1986).   If the employee establishes a prima facie case, the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would cause an undue burden. Id. at 134.   An accommodation is said to cause an undue burden when it results in "more than a de minimis cost" to the employer. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1997) (holding a cost is more than de minimis if it undercuts an employer's efficiency).

The determination whether a particular accommodation constitutes an undue hardship must be made by considering the particular factual context of each case. Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 134 (3d Cir. 1986).   Both economic and non-economic costs can pose an undue hardship upon employers. Webb v. City of Philadelphia, 562 F.3d 256, 260 (3d Cir. 2009). Non-economic costs can include, for example, violations of a collective bargaining agreement; the threat of possible criminal sanctions; and safety or security concerns. Webb v.

City of Philadelphia, 562 F.3d 256, 260 (3d Cir. 2009); E.E.O.C. v. GEO Grp., Inc., 616 F.3d

265 (3d Cir. 2010).

Further, an undue hardship can be found where an accommodation would be contrary to a

binding regulation or law. See United States v. Board of Educ., 911 F.2d 882, 891 (3rd Cir.1990)

(requiring defendant to violate state statute to accommodate plaintiff resulted in undue hardship);

Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir. 2000) (no Title VII religious discrimination

where not requiring employee to provide social security number would be in violation of federal

law); Bhatia v. Chevron U.S.A. Inc., 734 F.2d 1382, 1384 (9th Cir.1984) (company policy

promulgated to avoid risk of liability under state safety standards justified requiring employee to

shave facial hair despite contrary religious beliefs); Baltgalvis v. Newport News Shipbuilding,

Inc., 15 F. App'x 172, 173 (4th Cir. 2001); Weber v. Leaseway Dedicated Logistics, Inc., 166

F.3d 1223 (10th Cir. 1999) ("To require an employer to subject itself to potential fines also

results in undue hardship").

Here, Plaintiff, who had been employed by the City as a firefighter since 2004 and was

assigned to the Fire Department's Fire Shop to perform Air Mask Technician duties in

November 2015, made a request for an accommodation to allow him to wear a three-inch beard

that he had recently grown as an expression of his religious faith. **(SOMF #8, 9, 31)**  Upon

receiving Plaintiff's accommodation request, it was forwarded and reviewed by the City's

Solicitor's Office, Human Resources Department and others, and the City explored whether this

could be permitted under applicable state and federal regulations. **(SOMF #32)**  Deputy Chief

Culleny requested that Plaintiff submit further documentation in support of his request while his

request was being evaluated and Plaintiff also had conversations with the Human Resources

Director, Alexis Waiters. **(SOMF #33)**  Deputy Chief Culleny contacted New Jersey PEOSH to

inquire as to whether there is an exemption from PEOSH regulations for respirator wearers who wish to wear a beard for religious reasons and received an email from PEOSH's Patrick Bost on January 9, 2019, explaining that there are no accommodations that can be made for firefighters that would allow them to wear an SCBA or any tight-fitting respirator with a beard. **(SOMF #34-35)**  The Department also contacted its air mask vendor and a separate air mask vendor to inquire as to whether there was an alternative air mask for firefighters that allows for the wearing of a beard in a safe manner, but found that there were no such masks available. **(SOMF #37)** Plaintiff's accommodation request was denied. **(SOMF #38)**  Plaintiff was granted a separate religious accommodation request in 2019, when he requested that he not be forced to use the hand scan system to sign in and out of work each day; also, Plaintiff's switch into performing Air Mask Technician duties in 2015 was by request of Plaintiff to better accommodate his religious services schedule. **(SOMF #39, 40)**

Plaintiff's failure to accommodate claims fail because granting the request to wear a beard would create an undue burden.  As set forth above, in addition to the safety concerns that allowing Plaintiff to wear a beard would cause, the request itself is prohibited by binding safety regulations.  Granting such request and allowing Plaintiff to wear an air mask would be a violation of these binding regulations.  Such an accommodation would essentially make Plaintiff unable to perform the duties of a firefighter, creating additional safety risks for a Department that has seen its staffing levels decrease over the years.

While Plaintiff is assigned to the Air Mask Technician duties in the Fire Department, he is still a Firefighter for the Department, which remains his official job title for the Department. **(SOMF #10)**  He is enrolled in the New Jersey Police and Firemen's Retirement System ("PFRS"), employed in the Civil Service title of Firefighter, and is governed by the collective

bargaining agreement between the City of Atlantic City and the Atlantic City Professional Fire Fighters IAFF Local 198 union. **(SOMF #10-11)**   The ACFD does not have a policy or practice of exempting those assigned as Air Mask Technicians from assuming roles in fire suppression, search and rescue or any other activity in which an SCBA may be required. **(SOMF #13, 15)**  All firefighters in the Department, including those assigned to be Air Mask Technicians, are required to be fit-tested with the Department's self-contained breathing apparatus ("SCBA") tight-fitting air mask to ensure they can wear the mask with a proper seal and be ready to assume a role in fire suppression, search and rescue and/or any other activity in which an SCBA may be required at any time. **(SOMF #13, 15)**   In fact, the Operational Guidelines Respiratory Protective Program for the ACFD provides that "[t]he standardized use of SCBA is an <u>essential part</u> of the complete personal protective equipment provided for ***each member*** of the Atlantic City Fire Department." **(SOMF #13, emphasis added)**.   The ACFD does not have any permanent firefighter positions that are not required to be able to respond to fires and be ready to assume a role in fire suppression, search and rescue, and/or any other activity in which an SCBA may be required; in other words, there are no permanent "desk duty" or "light duty" firefighter positions in the ACFD. **(SOMF #15, 16)**

As part of his duties as Air Mask Technician, Plaintiff reports to the scene of structure fires to man the Air Unit and refill air bottles, if needed. **(SOMF #14)**  A situation could arise where the Air Mask Technician, who is on scene at the fire, was required to enter the immediately dangerous to life or health ("IDLH") environment for purposes of emergency rescue; this was acknowledged and testified to by both the Plaintiff's expert and by Chief Evans. **(SOMF #17, 18)**  Plaintiff's beard would prevent him from being able to safely wear the air

mask and execute such a rescue, both due to safety concerns and due to the prohibition of such conduct by the binding regulations.

Further, even if he is stationed outside of the IDLH atmosphere, Plaintiff can be ordered at any time by a superior on the fireground or in another emergency to perform operations that would require him to use an SCBA, be it for rescue, fire suppression or standby. **(SOMF #25, #26)** Plaintiff's own expert acknowledged that the Fire Department has the authority to determine what the mission of Plaintiff in the Air Mask Technician's role is and to order him into fire suppression duties if needed at the scene of a fire. **(SOMF #25)** Further, there is no guarantee that where Plaintiff is stationed will remain out of the smoke and IDLH area, due to constant changes in conditions, such as wind direction. **(SOMF #23)**

Similarly, due to a lack of available firefighters and/or due to an overwhelming amount of fire calls, a firefighter who is usually assigned to be the Air Mask Technician may be needed in an emergency to respond to a fire call and engage in fire suppression activities, if necessary. **(SOMF #20)** As the number of firefighters in the ACFD has decreased substantially in recent years[2], the probability of the Air Mask Technician being required to enter the IDLH environment and wear the air mask is even higher than it was in the past. **(SOMF #19, 20)** In fact, such a situation did arise in August 2020. On August 4, 2020, all firefighters including administrative and prevention personnel, and including Plaintiff, were called in to put the reserve apparatus in service due to the overwhelming call volume caused by a tropical storm. However, Plaintiff refused to report. **(SOMF #20, 21)** Plaintiff's expert acknowledged that situations such as these could arise and it is reasonable for the Department to have those in the fire shop put a reserve apparatus in service. **(SOMF #22)** Plaintiff's expert also acknowledged that having a firefighter

---

[2] Between 2009 and the Plaintiff's request in 2019, the Fire Department went from employing 274 firefighters to 189 firefighters. (SOMF #19)

with a beard that cannot engage in any activities that require an air mask, even in emergency situations, could potentially stress the Fire Department; and that it is important for fire departments to be as prepared as possible for sudden changes that put firefighters at risk and to have plans in place for these scenarios. **(SOMF #22, 24)**

As demonstrated above, Plaintiff in his role as Air Mask Technician, must still be ready to wear the SCBA for emergency rescue or other purposes, and was even called in to do as much during a tropical storm.  Granting the accommodation request would make him unable to perform his duties, creating additional safety risks for the ACFD, and thus causing an undue burden on the City.

As the 2nd Circuit Court of Appeals stated in <u>Bey</u>:

> An accommodation is not reasonable...if it is specifically prohibited by a binding safety regulation promulgated by a federal agency.  Whether that is because the illegality of the accommodation presents an "undue hardship" as the FDNY suggests, or because the existence of the federal regulation is itself an affirmative defense, makes little difference.
> ...
> OSHA's regulations are binding on the FDNY and prohibit the accommodation that the Firefighters seek.  That ends the matter. Of course, the Firefighters retain the ability to present their evidence to OSHA if they continue to believe that the respiratory-protection standard is unduly restrictive; but it is OSHA to which such a challenge should be directed, not the FDNY, and not the courts.
> ...
> Just as in the ADA context, we conclude that Title VII cannot be used to require employers to depart from binding federal regulations.

<u>Bey v. City of New York</u>, 999 F.3d 157, 168-170 (2d Cir. 2021); <u>see also</u> <u>Hamilton v. City of New York</u>, 563 F. Supp. 3d 42 (E.D.N.Y. 2021) (finding firefighter's requested religious accommodation to maintain a beard was not reasonable as it was prohibited by OSHA safety regulations).  As referred to above, an undue hardship is found where an accommodation would

be contrary to a binding regulation or law, which would be the case here.  See <u>United States v.</u> <u>Board of Educ.</u>, 911 F.2d 882, 891 (3rd Cir.1990); <u>Seaworth v. Pearson</u>, 203 F.3d 1056, 1057 (8th Cir. 2000); <u>Bhatia v. Chevron U.S.A. Inc.</u>, 734 F.2d 1382, 1384 (9th Cir.1984); <u>Baltgalvis v.</u> <u>Newport News Shipbuilding, Inc.</u>, 15 F. App'x 172, 173 (4th Cir. 2001); <u>Weber v. Leaseway</u> <u>Dedicated Logistics, Inc.</u>, 166 F.3d 1223 (10th Cir. 1999).

Similarly, a religious accommodation that causes safety or security risks – which would be the case here, as allowing Plaintiff to wear an air mask with a beard would cause safety issues and exempting Plaintiff from ever having to wear an air mask would create different safety issues, as explained above – constitutes an undue hardship under the law. See <u>Bhatia v. Chevron</u> <u>U.S.A., Inc.</u>, 734 F.2d 1382, 1384 (9th Cir.1984) (upholding grant of summary judgment to employer where plaintiff alleged employer discriminated against him on the basis of his religion by requiring all employees whose duties involved potential exposure to toxic gases to shave any facial hair that prevented them from achieving gastight face seal when wearing a respirator because employer established that if "it retained [the plaintiff] as a machinist and directed his supervisors to assign [him] to only such duties as involved no exposure to toxic gas," the employer would be burdened by having to "revamp its currently unpredictable system of duty assignments to accommodate the need for predicting whether particular assignments involved potential exposure to toxic gases" and requiring the plaintiff's coworkers "to assume his share of potentially hazardous work"); <u>see also</u> <u>E.E.O.C. v. GEO Grp., Inc.</u>, 616 F.3d 265 (3d Cir. 2010). As such, Plaintiff's requested accommodation would cause an undue burden on the City and his Title VII claim must be dismissed.

Alternatively, an undue hardship can be found where the accommodation would compromise a collective bargaining agreement and/or cause an impact on co-workers. <u>Miller v.</u>

Port Auth. of New York & New Jersey, 351 F. Supp. 3d 762, 789 (D.N.J. 2018), aff'd, 788 F. App'x 886 (3d Cir. 2019); Bhatia v. Chevron U.S.A., Inc., 734 F.2d 1382, 1384 (9th Cir.1984) (employer would be burdened by having to revamp processes and requiring plaintiff's coworkers "to assume his share of potentially hazardous work"); Aron v. Quest Diagnostics Inc., 174 F. App'x 82, 83 (3d Cir. 2006) ("recognizing that proposed accommodation would constitute undue hardship, in part, because it "would result in unequal treatment of the other employees and negatively affect employee morale").   An accommodation that would force the City to change the nature of Plaintiff's position and duties such that he would be prohibited from performing any duties while wearing an air mask would violate the collective bargaining agreement between the City and the IAFF Local 198, of which the Plaintiff is a bargaining unit member.   Article 7, titled "Management Rights," states in relevant part:

> It is the right of the City to...assign and direct its employees;...maintain the efficiency of its operations; determine the methods, means and personnel by which its operations are to be conducted; determine the content of job classifications;...take all necessary actions to carry out its mission in daily activities and in emergencies; and, exercise complete control and discretion over its organization and the technology of performing its work.

(SOMF #11, 12)   An accommodation which required the City to alter Plaintiff's responsibilities and duties such that he was prohibited from performing any duties while wearing an air mask would necessarily violate these management rights, including but not limited to the City's right to determine the methods, means and personnel by which to operate, to determine the content of job classifications, and to take all necessary actions to carry out its operations in daily activities and emergencies.   Such an accommodation would also unfairly burden Plaintiff's co-workers to assume his share of potentially hazardous work.

Because granting Plaintiff's accommodation request to wear a beard would cause an undue burden on the City, Plaintiff's accommodation claim under Title VII must be dismissed with prejudice.

**2. Plaintiff's Title VII retaliation claims must be dismissed.**

Courts analyze retaliation claims under a three-step burden shifting framework. First, the Plaintiff must make a prima facie showing that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. See Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006). If the Plaintiff makes this showing, the burden shifts to the employer to advance a "legitimate, non-retaliatory reason" for its conduct. Id. (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997)). If the employer makes such a showing, the burden shifts back to the Plaintiff to "convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 342 (quoting Krouse, 126 F.3d at 500–01).

Here, Plaintiff has failed to allege any adverse employment action taken against him for his request to wear a beard.  Aside from the denial of Plaintiff's request to wear a beard, Plaintiff does not allege that the Defendants have retaliated against him in any other way. **(SOMF# 41, 42)**  To the extent Plaintiff argues that the denial of the request itself is an adverse employment action or that if Plaintiff continued to wear a beard he would have faced an adverse employment action, the Defendants had "legitimate, non-retaliatory reasons" for their decision to enforce its Grooming Policy and to deny Plaintiff's request to wear a beard due to significant safety interests and the regulations which are binding on the City, as described in detail above.   The Plaintiff has advanced no evidence that these explanations by the City are false, nor that

retaliation was the real reason for the adverse employment action.   Therefore, Plaintiff's retaliation claims under Title VII must be dismissed with prejudice.

## V.   Count Four must be dismissed as Plaintiff cannot establish that he was discriminated or retaliated against because of his religion.

Count Four of the Complaint alleges violations of the New Jersey Law Against Discrimination ("NJLAD") because "Defendants' conduct described above has discriminated against Plaintiff due to his religion" and "Defendants have retaliated against Plaintiff as a result of the exercise of his religious beliefs." **(SOMF #6)**

### 1.   Plaintiff's NJLAD discrimination/accommodation claims must be dismissed.

The NJLAD requires employers to reasonably accommodate an employee's "sincerely held religious observance or practice" unless "after engaging in a bona fide effort the employer demonstrates that it is unable to reasonably accommodate the religious observance or practice without undue hardship on the conduct of the employer's business." N.J.S.A. 10:5-12(q). "Undue hardship" means an accommodation requiring unreasonable expense or difficulty, unreasonable interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system or a violation of any provision of a bona fide collective bargaining agreement. N.J.S.A. 10:5-12(q)(3)(a).

Here, the requested accommodation made by Plaintiff to wear a beard would constitute an undue hardship on the City, just as it would cause an "undue burden" on the City as described in the Title VII section of this brief.   Allowing Plaintiff to wear a beard would cause an "unreasonable interference with the safe or efficient operation of the workplace" as provided in the NJLAD, as in addition to the safety concerns that allowing Plaintiff to wear a beard would cause, the request itself is prohibited by binding safety regulations.   Granting such request and

allowing Plaintiff to wear an air mask would be a violation of these binding regulations.  Such an accommodation would essentially make Plaintiff unable to perform the duties of a firefighter, creating additional safety risks for the Department as described in the sections above and unreasonably interfering with the safe and efficient operation of the workplace.

Further, such accommodation would result in the inability of Plaintiff to perform the essential functions of a firefighter, including of a firefighter assigned as an Air Mask Technician, as he would be prohibited by law from wearing an air mask and engaging in firefighting operations.  This inability to perform the functions of his position constitutes an explicit "undue hardship" under the NJLAD statute itself.  See N.J.S.A. 10:5-12(q)(3)(c) ("An accommodation shall be considered to constitute an undue hardship if it will result in the inability of an employee to perform the essential functions of the position in which he or she is employed").

In addition, an "undue hardship" under the LAD includes "a violation of any provision of a bona fide collective bargaining agreement." N.J.S.A. 10:5-12(q)(3)(a).   An accommodation that would force the City to change the nature of Plaintiff's position and duties such that he would be prohibited from performing any duties while wearing an air mask would violate the collective bargaining agreement between the City and the IAFF Local 198, of which the Plaintiff is a bargaining unit member.  Article 7, titled "Management Rights," states in relevant part:

> It is the right of the City to...assign and direct its employees;...maintain the efficiency of its operations; determine the methods, means and personnel by which its operations are to be conducted; determine the content of job classifications;...take all necessary actions to carry out its mission in daily activities and in emergencies; and, exercise complete control and discretion over its organization and the technology of performing its work.

(SOMF #11, 12)  An accommodation which required the City to alter Plaintiff's responsibilities and duties such that he was prohibited from performing any duties while wearing an air mask

would necessarily violate these management rights found in the "provision of a bona fide collective bargaining agreement.," including but not limited to the City's right to determine the methods, means and personnel by which to operate, to determine the content of job classifications, and to take all necessary actions to carry out its operations in daily activities and emergencies. <u>N.J.S.A.</u> 10:5-12(q)(3)(a).

Further, an accommodation which required the City to alter his responsibilities and duties such that he was prohibited from performing any duties while wearing an air mask, even during emergencies would necessarily conflict with the City's non-negotiable managerial prerogative to assign duties to uniformed employees during an emergency or to meet emergent staffing needs. <u>See</u> <u>Township of Maplewood</u>, 23 NJPER ¶ 28007, 1996 WL 34548871 (1996) ("In emergency situations, employers have a managerial prerogative to make assignments unrelated to the primary duties of uniform personnel"), attached to Certification of Counsel as Exhibit 23; <u>City of Vineland and Ibew Local 210</u>, 41 NJPER ¶ 80, 2014 WL 7495333 (2014) ("If an emergency condition exists, a public employer may deploy its workforce to respond, even if doing so may deviate from normal employee assignments and overtime allocation"), attached to Certification of Counsel as Exhibit 24.

Therefore, granting Plaintiff his religious accommodation to wear a beard would constitute an undue hardship as defined by the New Jersey Law Against Discrimination, Plaintiff's discrimination claim fails and Count Four must be dismissed with prejudice.

**2.  Plaintiff's NJLAD retaliation claims must be dismissed.**

The retaliation section of the NJLAD provides that is unlawful for:

> any person to take reprisals against any person because that person has
> opposed any practices or acts forbidden under this act or because that
> person has sought legal advice regarding rights under this act, shared

> relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12(d).

Similar to a Title VII retaliation claim, to state a prima facie case for retaliation under the NJLAD, Plaintiff must show that he (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. Sanchez v. SunGard Availability Servs. LP, 362 Fed. Appx. 283, 287 (3d Cir. 2010); Nuness v. Simon & Schuster, Inc, 221 F. Supp. 3d 596, 605 (D.N.J. 2016). Once a plaintiff establishes a prima facie case of retaliation, the defendants must "articulate a legitimate, non-retaliatory reason for the decision." Young v. Hobart W. Grp., 897 A.2d 1063, 1072–73 (App. Div. 2005) (quoting Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (App. Div. 1995)). Next, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Id. (quoting Romano, 665 A.2d at 1142).

Similar to Plaintiff's Title VII retaliation claims, Plaintiff's NJLAD retaliation claim fails. Plaintiff has failed to allege any adverse employment action taken against him for his request to wear a beard. Aside from the denial of Plaintiff's request to wear a beard, Plaintiff does not allege that the Defendants have retaliated against him in any other way. **(SOMF #41, 42)** To the extent Plaintiff argues that the denial of the request itself is an adverse employment action or that if Plaintiff continued to wear a beard he would have faced an adverse employment action, the Defendants had "legitimate, non-retaliatory reasons" for their decision to enforce its Grooming Policy and to deny Plaintiff's request to wear a beard due to significant safety

interests and the regulations which are binding on the City, as described in detail above.   The Plaintiff has advanced no evidence that these explanations by the City are false, nor that retaliation was the real reason for the adverse employment action.   Therefore, Plaintiff's retaliation claims under Title VII must be dismissed with prejudice.

## VI.   No punitive damages can be awarded for Plaintiff's § 1983 and NJCRA claims.

While not a matter of liability, it should be noted that the Complaint seeks punitive damages. **(SOMF #1)** Such remedy is unavailable to Plaintiff for his Section 1983 and New Jersey Civil Rights Act ("NJCRA") claims.   No punitive damages may be awarded against a municipality in Section 1983 actions and in NJCRA actions. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Gardner v. New Jersey State Police, No. CV 15-8982 (RBK/AMD), 2016 WL 6138240 (D.N.J. Oct. 21, 2016), attached to Certification of Counsel as Exhibit 25.   Therefore, Defendants cannot be liable for punitive damages under Counts One and Two of the Complaint and the claims for punitive damages must be dismissed.

## VII.   Alternatively, the claims against individual defendants Evans and Culleny must be dismissed.

If the claims made by Plaintiff are not altogether dismissed – which, as demonstrated above, they should be – the claims as made against the individual defendants Evans and Culleny must still be dismissed.

### 1.  The Title VII claims in Count Three must be dismissed against the individual defendants.

Under long-standing federal law, including Third Circuit case law, individual employees cannot be held liable under Title VII. Dici v. Com. of Pa., 91 F.3d 542, 552 (3d Cir. 1996);

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997); Kohn v. AT&T Corp., 58 F. Supp. 2d 393, 421 (D.N.J. 1999).

Therefore, Plaintiff cannot sustain his Title VII claims against Defendants Evans and Culleny, and such claims must be dismissed as a matter of law.

**2.  NJLAD claims in Count Four must be dismissed against the individual defendants.**

Preliminarily, the individual Defendants named herein are not Plaintiff's employer as defined under the Law Against Discrimination, and have not participated in any "aiding and abetting" of discrimination and thus no individual named as a Defendant in this matter can be held liable for violations under the NJLAD as set forth in Count Four.

N.J.S.A. 10:5-12a prohibits unlawful employment practices and unlawful discrimination by an employer.  N.J.S.A. 10:5-5 sets forth the definition of "employer" in relation to the New Jersey Law Against Discrimination ("NJLAD").   Under a plain reading of the definitions contained in N.J.S.A. 10:5-5, an individual supervisor is not defined as an "employer" under the NJLAD. Tarr v. Ciasulli, 181 N.J. 70, 83 (2004). New Jersey Courts have determined that the "statutory basis [under NJLAD] for personal liability by any individual is limited to acts that constitute aiding and abetting," Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 568 (2008). Accordingly, because there can be no individual liability under the provisions of the NJLAD, except for aiding and abetting, Count Four of the Complaint must be dismissed against Defendants, Evans and Culleny.

A defendant cannot be held liable for "aiding and abetting" unless it is found that the defendant has aided and abetted the acts of discrimination or the creation of a hostile work environment due to, in this case, Plaintiff's religion.  In Cicchetti v. Morris County Sheriff's Office, the Supreme Court held "individual liability of a supervisor for acts of discrimination

or for creating or maintaining a hostile work environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'" 194 N.J. 563, 594 (2008) (citations omitted); Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 576 (2009) (citing Tarr v. Ciasulli, 181 N.J. 70, 83-84 (2004) ("Plaintiff's failure to assert facts supporting an aiding and abetting theory is fatal to her cause of action.")). In order for Plaintiff to prevail on this claim, the Court in Ciasulli articulated the requisite showing necessary:

> Thus, in order to hold an employee liable as an aider or abettor, a Plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."

Ciasulli, 181 N.J. at 84 (quoting Hurley v. Atlantic City Police Dep't., 174 F.3d 95, 127 (3d Cir.1999)). In Cicchetti, the Supreme Court of New Jersey ruled that absent aiding and abetting, an alleged harassing supervisor could not, as such, be individually liable:

> We have thus held that a supervisor's behavior, either through acts of omission or commission, may form the basis for a hostile work environment claim to be made against the employer and, depending upon the particular circumstances, that it may support a punitive damage award against the employer as well. Even so, the supervisor's part in the analysis was only that of the one whose acts or failings could be attributed to the employer for liability purposes. However, we did not conclude that the supervisor could be individually liable for his or her acts apart from an aiding and abetting analysis. On the contrary, we have recently held that the plain meaning of the definition of employer in the LAD does not include a supervisor. See Tarr, supra, 181 N.J. at 83, 853 A.2d 921. Instead, individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the "aiding and abetting" mechanism that applies to "any person." N.J.S.A. 10:5-12(e); see Herman v. Coastal Corp., 348 N.J. Super. 1, 27-28, 791 A.2d 238 (App. Div. 2002) (concluding that individual liability is limited to aiding and abetting by the supervisor).

Cicchetti, supra, 194 N.J. at 594.

For there to be individual liability, the court must first find the employer is liable under the LAD. Tarr v. Ciasulli, 181 N.J. 70, 82-83 (2004).

In order to hold a defendant individually liable under the LAD, a plaintiff must show that: (1) the individual supervisor-defendant was generally aware of his/her role in the overall illegal, unlawful or tortious activity at the time he/she provided the assistance, and (2) the individual defendant "knowingly and substantially assisted" the principal violation. Id. at 84. Factors to be considered by the court in determining whether the defendant substantially assisted the principal include: (1) the nature of the acts, (2) the amount of assistance, (3) whether or not the supervisor-defendant was actually present when the acts were being committed, (4) the supervisor defendant's state of mind, and (5) his or her relation to others. Id. However, an individual defendant's failure to act so as to protect plaintiff or failure to respond effectively to a plaintiff's complaints of discrimination is insufficient to conclude that the individual defendant provided substantial assistance to the employer, so as to hold a defendant individually liable. Id. at 83.

Here, the Plaintiff does not make any mention or allegation of "aiding and abetting" with regards to Defendants Chief Evans and Deputy Chief Culleny. The only mentions of Chief Evans in the substance of the Complaint at all are in Paragraph 38, which states in relevant part that Defendant Culleny "called [Plaintiff] and said that Chief Scott Evans received an email from the City Solicitor's office advising them to keep Mr. Smith from responding to any fire emergencies until a decision was made regarding his requested accommodation;" in Paragraph 42, which states in relevant part that "Mr. Smith e-mailed Deputy Chief Culleny, copying Chief Evans and a number of other individuals requesting the status of his request for an accommodation and requesting information as to when he would be permitted to resume

responding to fire emergencies;" and in Paragraph 50, which states that Plaintiff "was taken to Chief Evan's [sic] office where he was told that his request had been denied. He was also provided with a letter." **(SOMF #1)**   As to Deputy Chief Culleny, the Complaint only alleges that Culleny: received the request for an accommodation to wear a beard from Plaintiff; requested and received additional information from Plaintiff while the City was evaluating his request; received a request from Plaintiff for an update on the accommodation request; referred Plaintiff to the Human Resources Department; and took Plaintiff to the Chief's office, where he was told his request had been denied. **(SOMF #1, ¶ 32, 39-43, 49-50)**

Plaintiff's individual claims against Chief Evans and Deputy Chief Culleny fail as there are no allegations that Chief Evans and Deputy Chief Culleny aided and abetted any discriminatory conduct against Plaintiff, and Plaintiff has provided no evidence to the contrary. In fact, during deposition, Deputy Chief Culleny explained that while he contacted PEOSH and the air mask manufacturer to inquire as to any potential accommodations, the decision to deny Plaintiff's request for an accommodation was not made by Chief Evans or Deputy Chief Culleny. **(SOMF #37)**

Accordingly, as there is no factual basis sufficient to show that Deputy Chief Culleny or Chief Evans "aided and abetted" unlawful discrimination against Plaintiff, the claims against the individual Defendants must be dismissed.

## CONCLUSION

There are no genuine issues of material fact required to be decided by a jury which would preclude the granting of summary judgment in favor of Defendants City of Atlantic City, Chief Scott Evans, and Deputy Chief Thomas J. Culleny in the instant matter.  Based on the material undisputed facts, as a matter of law Plaintiff cannot prove the claims of the Complaint as against

Defendants.   Therefore, based on the reasons set forth above and the record as a whole,

Defendants respectfully request this court to dismiss the Complaint with prejudice.

Respectfully Submitted,

Attorneys for Defendants City of Atlantic City,
Chief Scott Evans and Deputy Chief Thomas J.
Culleny


By:   __s/_*Nicholas DelGaudio*_____
         NICHOLAS DELGAUDIO, ESQ.


Dated:  April 26, 2023