**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------ X

ALEXANDER SMITH,

                                        Plaintiff,

                -against-

                                                                No. 19-cv-06865 (CPO)(MJS)

CITY OF ATLANTIC CITY; SCOTT EVANS, as Chief
of the Atlantic City Fire Department; and THOMAS J.
CULLENY JR., Deputy Chief of the Atlantic City Fire
Department,

                                        Defendants.

------------------------------------------------------------------ X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

LEGAL STANDARD........................................................................................... 4

ARGUMENT .................................................................................................... 5

POINT I:   GENUINE DISPUTES OF MATERIAL FACTS EXIST PRECLUDING
SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AND FOURTEENTH
AMENDMENT CLAIMS AND THE CORRESPONDING NEW JERSEY
STATE CONSITUTIONAL CLAIMS....................................................... 6

    A. First Amendment Free Exercise............................................................ 6

        1.   Strict Scrutiny Applies.................................................................8

        2.   There Was No Rational Basis for Requiring Plaintiff to Remain Clean Shaven
When His Duties Did Not Require Him to Wear a Mask or Engage in Fire
Suppression ...............................................................................11

    B. Fourteenth Amendment Equal Protection............................................. 13

POINT II: GENUINE DISPUTES OF MATERIAL FACT EXIST PRECLUDING
SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII AND NJLAD
CLAIMS OF DISCRIMINATION AND RETALIATION........................................ 15

    A. Disparate Treatment by Way of Failing to Accommodate ................... 15

    1.   Adverse Employment Action.............................................................. 18

    2.   Inference of Discrimination .............................................................. 20

    3.   Undue Hardship/Undue Burden......................................................... 21

    B. Retaliation ......................................................................................... 25

    C. New Jersey Law Against Discrimination ............................................ 28

POINT III:PLAINTIFF'S CLAIMS AS AGAINST THE INDIVIDUAL DEFENDANTS
ARE PROPER ................................................................................................ 29

CONCLUSION................................................................................................. 30

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245 (3d Cir. 2014) .......................................... 19

*Abramson v. William Paterson Coll.*, 260 F.3d 265 (3d Cir. 2001) .......................................... 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 5

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1980) .......................................................... 18

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) .................................................................. 25

*Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021) .............................................................. 11

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) ...................................................................... 16

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ............................................................................ 6

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001) .................................................................... 19

*Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249 (3d Cir. 2017) .................................. 26, 27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 4, 5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ..................... 7, 8

*Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563 (N.J. 2008) .......................................... 29

*Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) ................................ 25

*Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2d Cir. 1993) .............................................. 25

*Daniels v. Williams*, 474 U.S. 327 (1986) .................................................................................. 6

*Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010) ............................................................ 14

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) .............................................. 20

*EEOC v. Aldi, Inc.*, Civil Action No. 06-01210, 2008 U.S. Dist. LEXIS 25206 (W.D. Pa. Mar. 28, 2008) ...................................................................................................................................... 22

*Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1989) ................. 6

*Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850 (3d Cir. 2014) ........................... 6

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000)................................................. 26

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999)

................................................................................................................................... 8, 9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ................. 10

*Groff v. DeJoy*, No. 22-174, 600 U.S. _____, 2023 U.S. LEXIS 2790 (June 29, 2023) .......... 17, 21

*Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005) .................................................. 14

*Holder v. City of Allentown*, 987 F.2d 188 (3d Cir. 1993) ........................................... 14

*Holt v. Hobbs*, 574 U.S. 352 (2015) ........................................................................ 10

*Hurley v. Atl. City Police Dep't*, 174 F.3d 95 (3d Cir. 1999) ....................................... 29

*Jewish Home v. Ctrs. For Medicare & Medicaid Servs.*, 413 Fed. Appx. 532 (3d Cir. 2011)..... 14

*Johnson v. Robison*, 415 U.S. 361 (1974).................................................................... 14

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997) .............................. 26

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ............................................................ 6

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217 (3d Cir. 2007).............................. 26

*Litzman v. New York City Police Dep't*, 12-cv-4681 (HYB), 2013 WL 6049066, 2013 U.S. Dist.

LEXIS 162968 (S.D.N.Y. Nov. 15, 2013)................................................................. 9

*Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523 (D.N.J. 2000) .............................. 5

*Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006)....................................................25, 26, 27

*Nelson v. Upsala Coll.*, 51 F.3d 383 (3d Cir. 1995) ...................................................... 26

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ...................................................................... 14

*Reynolds v. Jersey City Dep't of Pub. Works*, No. 2:18-1418, 2019 U.S. Dist. LEXIS 2091 (D.N.J.

Jan. 4, 2019)................................................................................................ 16

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .............................................................. 16, 20

*Rivers v. Potter*, No. 05-4868, 2007 U.S. Dist. LEXIS 92590, at *26-27 (D.N.J. Dec. 11, 2007)27

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) ..................................... 19

*Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220 (3d Cir. 2000) .................... 16

*Singh v. Berger, 56 F.4th 88 (D.C. Cir. 2022)* ........................................................ 9, 10

*Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441 (1923)........................................... 14

*Skoorka v. Kean Univ.*, No. 09-cv-3428, 2023 U.S. Dist. LEXIS 27533 (D.N.J. Feb. 16, 2023).. 5

*Sughrim v. New York*, 503 F. Supp. 3d 68 (S.D.N.Y. 2020) .......................................... 9

*Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002) ...................................... 9

*Terry v. Ashcroft*, 336 F.3d 12 (2d Cir. 2003) ............................................................ 25

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)................................... 26

*Trafton v. City of Woodbury*, 799 F. Supp. 2d 417 (D.N.J. 2011) .................................. 6

*TWA v. Hardison*, 432 U.S. 63 (1977).................................................................. 21

*United States v. Batchelder*, 442 U.S. 114 (1979) ....................................................... 14

*Wayte v. United States*, 470 U.S. 598 (1985)............................................................ 15

*Willowbrook v. Olech*, 528 U.S. 562 (2000)............................................................. 14

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)............................................................... 7

**Statutes**

N.J. Stat. Ann. § 10:6-2................................................................................. 6

N.J.S.A. 10:5-12(e) .................................................................................... 29

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ........................... 15

**Other Authorities**

EEOC Guidance, Section 12: Religious Discrimination ........................................... 19

## PRELIMINARY STATEMENT

Plaintiff Alexander Smith has been a dedicated City of Atlantic City and Atlantic City Fire Department ("ACFD") employee since 2004. He is also a devout Christian. These two facts need not be mutually exclusive. Yet, the Defendants City of Atlantic City, Scott Evans, Chief of the Atlantic City Fire Department, and Thomas Culleny Jr., Deputy Chief of the Atlantic City Fire Department, put Mr. Smith in an impossible position; forcing him to choose to either comply with his sincerely held religious belief or face discipline and termination. The United States Constitution, federal law, and New Jersey state laws protect Mr. Smith from having to make that choice. Defendants nevertheless subjected him to months of fear and continuing retaliation for his requested religious accommodation.

In November of 2015, Mr. Smith was promoted to Air Mask Technician, a position that does not ever require him to enter into a burning building. As a result, on January 3, 2019, and in accordance with his religious beliefs, Mr. Smith grew a modest beard and requested a religious accommodation to wear the beard. On February 15, 2019, Mr. Smith's religious accommodation request was denied. Mr. Smith was informed that, if he did not appear for work clean shaven, he would immediately be suspended without pay and face termination.

While serving as the Air Mask Technician, Mr. Smith has not been fit tested and had never been required to enter a burning building or wear a face mask at any kind. In fact, even the prior Air Mask Technician has stated that he has never had don a mask and enter a structural fire while serving as the Air Mask Technician and had not seen an Air Mask Technician engage in fire suppression since he first joined the ACFD in 1987. This is because Air Mask Technicians must ensure that all firefighters entering a structure fire have the appropriate air masks and oxygen tanks. Further, Air Mask Technicians must man the Air Truck to ensure the refilling of necessary and

1

lifesaving oxygen cylinders for firefighters tasked with fire suppression. As Air Mask Technician, Mr. Smith has knowledge of individuals who have passed the fit test with a beard or who wear their Self-Contained Breathing Apparatus ("SCBA") with a beard. Though ACFD has a written policy prohibiting beards of any length, the policy provides for an exception to this rule that when members are "called in on an emergency call-back," such members "shall not be required to shave prior to arrival at the station or fire scene."

Rather than work with Mr. Smith and engage in any interactive process to find a solution that does not mandate that he shave every single day in violation of his religious beliefs, Defendants fully denied his requested religious accommodation. Defendants did not inquire whether Mr. Smith would be willing to accept the alternative accommodations, even such as wearing a beard but shaving in the exceedingly rare circumstances that he would be required to abandon his mission as the Air Mask Technician and engage in fire suppression.

As a result, ACFD violated his constitutional rights to express his religious beliefs as well as Title VII and the New Jersey Law Against Discrimination ("NJLAD"). Mr. Smith was then subjected to retaliation when he tried to speak up for himself and complained about the discrimination he faced. Mr. Smith was placed in the exceedingly difficult decision of refusing a direct order to respond to a fire and engage in fire suppression knowing that he had not received the necessary training or fit testing since he became an Air Mask Technician.

Therefore, substantial issues of fact remain including, *inter alia*, whether Defendants engaged in the interactive process before denying Mr. Smith's accommodation, whether Mr. Smith would ever be required to engage in fire suppression as the Air Mask Technician, and whether ACFD would suffer any "undue hardship" if it granted the accommodation.

For the reasons argued herein, the Defendants' motion should be denied in its entirety.

2

**STATEMENT OF FACTS**

Plaintiff Alexander Smith joined the Atlantic City Fire Department ("ACFD") on February 22, 2004. (Plaintiff's Supplemental Local Civil Rule 56.1 Statement of Disputed Material Facts ("Pl. 56.1") ¶ 3). Though he initially served as a firefighter in fire suppression responding to fires, in November 2015, Mr. Smith was promoted to the role of Air Mask Technician. (*Id.* ¶ 4).

Pursuant to Mr. Smith's faith as a Christian, it is Mr. Smith's sincerely held religious belief that his faith requires him to wear a modest beard. (*Id.* ¶¶ 1-2). The ACFD does not provide a policy for requesting religious accommodation. (*Id.* ¶ 28). Its grooming guidelines, found in Operational Guideline Number 0303, do contain an exception for emergency call-backs, permitting a firefighter to remain bearded in the event of an emergency. (*Id.* ¶ 27).

On January 3, 2019, Mr. Smith requested a religious accommodation to wear the beard he began growing in December of 2018. (*Id.* ¶¶ 29, 33). On January 7, 2019, Mr. Smith and a colleague responded to a fire and Mr. Smith successfully fulfilled his role as the Air Mask Technician, filling over 20 air cylinders without issue, wearing his beard. Despite the successful completion of his duties with a beard, Mr. Smith was barred from responding to emergencies while his request was pending. (*Id.* ¶¶ 38-39).  On January 9, 2019, Defendant Chief Culleny requested additional information regarding the basis of his religious accommodation. (*Id.* ¶¶ 41-42). Mr. Smith readily provided the scriptural basis for his belief. (*Id.* ¶ 43).

While Mr. Smith was originally trained in fire suppression, since assuming the role of Air Mask Technician, Mr. Smith has not entered a structural fire or donned an SCBA mask. (*Id.* ¶ 30). In fact, no air mask technician prior to Mr. Smith had ever entered a structural fire or donned a Self-Contained Breathing Apparatuses ("SCBA") mask since at least 1987. (*Id.* ¶ 31-32). That is because Mr. Smith's role as Air Mask Technician requires that he administer and oversee all SBCA

masks, fit test fire fighters engaging in fire suppression, and respond to the area around a fire with an Air Truck to refill and replenishes oxygen in air cylinders used by firefighters engaging in fire suppression. (*Id.* ¶ 13). Mr. Smith is also responsible for conducting fit tests, but not scheduling them. (*Id.*). In fact, Mr. Smith has not been scheduled for a fit test since he became the Air Mask Technician in large part because he is not required to respond to fires and engage in fire suppression. (*Id.* ¶ 16). Mr. Smith has fit tested a number of firefighters who have passed the fit test with modest beards of the length he would like to grow. (*Id.* ¶¶ 19). In addition, though all firefighters engaging in fire suppression must be trained every year, Mr. Smith has not received full retraining in fire suppression since becoming the Air Mask Technician and only received one brief training after requesting it. (*Id.* ¶ 75).

In direct retaliation for his request for a religious accommodation and this litigation, in August of 2020, Mr. Smith was charged with insubordination for refusing to respond to fire suppression activities when he had not been trained in five years. (*Id.* ¶ 75-78). Mr. Smith believed his response would be a danger to himself, his colleagues, and the public. (*Id.* ¶ 76). Mr. Smith was suspended for 40 days, including 20 days without compensation. (*Id.* ¶ 78). As a result of ACFD's failure to train Mr. Smith on a semiannual basis according to New Jersey state law, the ACFD received a citation noting a "serious violation." (*Id.* ¶ 79).

## <u>LEGAL STANDARD</u>

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). "To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party." *Skoorka v. Kean Univ*., No. 09-cv-3428, 2023 U.S. Dist. LEXIS 27533, at *9 (D.N.J. Feb. 16, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co*., 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## ARGUMENT

Genuine issues of material fact exist in the matter making summary judgment inappropriate including, but not limited to, whether Mr. Smith, as Air Mask Technician, would ever be required to don an SCBA mask; whether the ACFD failed to consider any alternatives to requiring Mr. Smith to remain fully shaved when his role does not require him to don an SCBA mask and therefore failed to accommodate him; whether ACFD treats others with facial hair for non-religious reasons differently than Mr. Smith who wear facial hair for non-religious reasons are and, therefore, whether the ACFD faces an undue hardship by failing to accommodate him. As argued herein, these issues should reach the jury and Defendants' motion for summary judgment should be denied in its entirety.

**POINT I:**

**GENUINE DISPUTES OF MATERIAL FACTS EXIST PRECLUDING SUMMARY
JUDGMENT ON PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT CLAIMS
AND THE CORRESPONDING NEW JERSEY STATE CONSITUTIONAL CLAIMS**

A claim pursuant to 42 U.S.C. § 1983[1] may be made where: (1) "the conduct complained

of was committed by a person acting under color of state law," and (2) that "this conduct deprived

[the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United

States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993); *Daniels v. Williams*, 474 U.S. 327

(1986). There is no question that the Defendants acted under color of state law. The question then

turns on whether Defendants' conduct deprived Plaintiff of his rights under the Free Exercise and

Equal Protection clauses of the U.S. Constitution.

**A. First Amendment Free Exercise**

The First Amendment is applicable to the States through the Fourteenth Amendment,

*Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), and it provides in relevant part that "Congress

shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

U.S. Const. amend. I. Under the Free Exercise Clause, a law that burdens religious practice need

not be justified by a compelling governmental interest if it is neutral and of general applicability.

*Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990).  On the other

hand, when a facially neutral rule is applied in a discriminatory manner, strict scrutiny is

---

[1] The New Jersey Civil Rights Act ("NJCRA") mirrors § 1983 and "creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); N.J. Stat. Ann. § 10:6-2. Courts in New Jersey have interpreted the NJCRA "as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amendable to suit." *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014) (citations omitted). Because the standard under the New Jersey Constitution is the same as that under the United States Constitution, the Court should interpret Plaintiff's NJCRA claims analogously to his § 1983 claims. *See Trafton*, 799 F. Supp. 2d at 443-44.

appropriate. *Id.* at 879.

In *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, the Supreme Court found that, "[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." 508 U.S. 520 (1993). Thus, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral; and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* Because a provision specifically burdens religious practices, it must advance a compelling government interest to pass constitutional muster. *See id.* The Court added, "[t]he Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. The Clause 'forbids subtle departures from neutrality,' and 'covert suppression of particular religious beliefs.'" *Id.* The Court noted that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked as well as overt." *Id.*; *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("Only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.").

Alexander Smith is the Air Mask Technician employed by the ACFD. He is one of only a handful of individuals who are trained to perform air mask technician duties, and is the only individual with the title Air Mask Technician. As the Air Mask Technician, he is not required to don face masks of any kind nor engage in fire suppression. (Pl. Supp. 56.1 ¶ 14). Up until the filing of this litigation, Mr. Smith had not been fit tested. (Pl. Supp. 56.1 ¶ 16). He has personally witnessed firefighters who do engage in fire suppression wearing beards. (Pl. Supp. 56.1 ¶ 81). He has seen some firefighters who have passed the fit test wear an SCBA mask. (Pl. Supp. 56.1 ¶ 19,

82). Additionally, the ACFD provides an exemption, delineated in the ACFD Operations Guidelines Number 0303 which provides an exemption in call-back circumstances. (Pl. Supp. 56.1 ¶ 26). Therefore, the ACFD policy is not a neutral policy with general applicability. Mr. Smith's request for a beard was not a substantial deviation from the accommodations provided to others within the department and would not interrupt maintaining a uniform appearance for the ACFD.

     1.  <u>Strict Scrutiny Applies</u>

On its face, the ACFD Operations Guidelines Number 0303 provides an exemption to the no-beard rule in call-back circumstances. (Pl. Supp. 56.1 ¶ 26). This exemption excluding religious exemption amounts to targeting of religious beards and requires a heightened standard. *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999) ("[W]e conclude that the Department's decision to provide medical exemptions while refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*.") Thus, strict scrutiny must apply.

Defendants' argument is that rational basis review applies because the policy here is applicable to all. (Defs' Br. at 9.) However, this is not the case. As an initial point, as Air Mask Technician, Mr. Smith has personal knowledge of ACFD firefighters who have passed the fit test with a beard. (Pl. Supp. 56.1 ¶ 19). Additionally, on its face, the ACFD policy includes a call-back exception to the no-beard policy. (Pl. Supp. 56.1 ¶ 26). It is the act of treating religious accommodation requests differently than secular reasons that form the basis of the need to analyze using a higher level of scrutiny. This is because it "infringe[s] upon or restrict[s] [religious] practices." *Church of the Lukumi Babalu Aye, Inc*., 508 U.S. at 533; *see also Fraternal Order of Police*, 170 F.3d at 365 (applying intermediate scrutiny to a facially neutral law).

Defendants' exact argument was considered but rejected in *Litzman v. New York City*

*Police Dep't*, 12-cv-4681 (HYB), 2013 WL 6049066, 2013 U.S. Dist. LEXIS 162968 (S.D.N.Y. Nov. 15, 2013). There, the court explained that "'[f]acial neutrality is not determinative' when the record shows that Plaintiff was terminated pursuant to a policy that is not uniformly enforced." *Id.* at *7–8. A court must "look beyond the text of the [policy] and examine whether [the defendants] enforce[] it on a religion-neutral basis . . . ." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 167 (3d Cir. 2002). As then-Judge Alito explained, neutrality toward religion prohibits government from "deciding that secular motivations are more important than religious motivations." *Fraternal Order of Police*, 170 F.3d at 365.

In *Syed v. City of New York*, which dealt with the NYPD's beard policy, the court reasoned that strict scrutiny applied because, "[w]hile an across-the-board policy for which there is no exemption may be analyzed under a rational-basis standard, that's not the case, however, where the policy admits to individual exemptions. This policy does appear to admit to individual exemptions." (Droubi Aff. Ex. 13, June 22, 2016 TRO Hearing Tr. at 25:3-7) Additionally, in *Sughrim v. New York*, the court noted that, "it is abundantly clear that [as alleged, the policy] is not neutral in operation, as assessed in practical terms." 503 F. Supp. 3d 68, 89 (S.D.N.Y. 2020) (citations and quotations omitted). Similarly, here, the policy is not neutral in operation when looked at from a practical vantagepoint, particularly with the emergency call back exception. And, most recently in the D.C. Circuit, the Court remanded a denial of a preliminary injunction to Sikh trainees hoping to enter the Marine Corps's 13-week basic training program because the Marine Corps was favoring secular reasons over religious ones. *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022) (awarding entry of preliminary injunction including "requiring the Marine Corps to

allow them to enlist without shaving their heads or beards").[2]

Mr. Smith properly requested and substantiated the basis of his request for a religious accommodation. He requested the accommodation from his superior. (Pl. Supp. 56.1 ¶ 33). When his superior requested that he provide more information regarding the basis of his request—though the sincerity of his religious beliefs should not have questioned[3]—Mr. Smith provided letters and supporting religious citations in support of his belief that he was required to wear a beard. (Pl. Supp. 56.1 ¶ 36-37, 41-43, 49). There was no interactive process that would have worked through any alternatives, including the option that Mr. Smith be asked to shave in an emergency. *Singh*, 56 F.4th at 104 (citing *Holt v. Hobbs*, 574 U.S. 352, 365-367 (2015) ("While the Corps need not refute every conceivable option to show its policy is the least restrictive means of advancing a compelling interest, it must at minimum explain why obvious and available alternatives are not workable.").

When his request was denied, Mr. Smith made the extraordinary and painful decision to shave his beard in contravention of his sincerely held religious beliefs in order to keep his job and benefits, for which his wife and three kids rely. (Smith Aff. ¶ 72). Because the object of the policy infringed on and restricted the practice of Mr. Smith's religion, it was not neutral. It was not justified by any interest, let alone a compelling one, and was certainly not narrowly tailored because it was not tailored in any way. Mr. Smith was not in a role that required an air mask and indeed his role as the Air Mask Technician would be left unfilled should he have been tasked with donning an SCBA and engaging in fire suppression. (Pl. Supp. 56.1 ¶ 72-73).

---

[2] Though *Singh* primarily focuses on the standard pursuant to the Religious Freedom Restoration Act of 1993 (RFRA), the Court did not reach the merits of the First Amendment claim "[b]ecause RFRA claims 'should be adjudicated in the same manner as constitutionally mandated applications' of the strict scrutiny test." 56 F.4th 88 at 107 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006)).

[3] *Baker v. Home Depot*, 445 F.3d 541, 547 (2d Cir. 2006) ("the question of the sincerity of an individual's religious beliefs is inherently within that individual's unique purview.").

Therefore, because the policy violated Mr. Smith's rights under the Free Exercise clause the Court should use strict scrutiny analysis to hold that is the Defendants' actions in wholly denying Mr. Smith's religious accommodation request on the purported basis of "safety and security", where he does not ever have to don an SCBA mask given his job duties,  is not narrowly tailored.

2. <u>There Was No Rational Basis for Requiring Plaintiff to Remain Clean Shaven When His Duties Do Not Require Him to Wear a Mask or Engage in Fire Suppression</u>

Even if the Court were to find that the policy was neutral, which Plaintiff argues should not be the case, no rational basis exists for requiring an employee that does not engage in fire suppression to remain clean shaven.

Defendants argue that the "ACFD does not allow any individualized categorical exemptions to allow Department employees to wear a beard from any reasons, religious or otherwise. (Defs. Br. at 13). This is false. Other ACFD firefighters have passed the fit test with a beard and don beards while on the job and responding for duty. (Pl. Supp. 56.1 ¶ 19, 81-82). ACFD does provide for a non-religious exception to the "no-beard" policy, authorizing that "those persons called in on an emergency call-back shall not be required to shave prior to arrival at the station or fire scene." (Pl. Supp. 56.1 ¶ 27).

Defendants' argument that a "similar" case filed in New York was dismissed on grounds related to respirators. (Defs' Br. at 15) (citing *Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021)). However, the *Bey* case related to a claim of disability discrimination under the Americans with Disabilities Act; not the right enshrined by the U.S. Constitution to express one's religious beliefs. Further, Defendants again ignore that Mr. Smith, as the Air Mask Technician, would never be required to don a respirator or that others within the Department frequently wear beards for

11

secular reasons. And Defendants do not focus on their failure to work with Mr. Smith to adopt an accommodation that would support his religious beliefs while also incorporating the safety issues they identify. This could include a policy, as adopted by the U.S. Armed Forces, that would allow Mr. Smith to shave "if the unit is in, or about to enter, a real tactical situation where use of a protective mask is actually required and where the inability to safely use the mask could endanger the Soldier and the unit." (Pl. Supp. 56.1 ¶ 56, Ex. 10, U.S. Army Directive 2017-03 ¶ 5(b)(2)).

Defendants argue that, under rational basis review, the City's legitimate government objective is safety and compliance with binding state and federal regulations. (Defs. Br. at 13-14). Defendants' own conduct has gone against both of these purported interests. First, Defendants have failed to administer Plaintiff a fit test and the necessary retraining which would be required for him to safely respond to a fire and engage in fire suppression—which they argue Plaintiff may be ordered to do at any time. Defendants have displayed no interest in Plaintiff's safety and have ben cited for serious violations of New Jersey state law as a result. (Pl. Supp. 56.1 ¶ 79).  In August 2020, knowing that Plaintiff had not been fit tested or retrained, Defendants ordered Plaintiff to respond to the scene of fire and engage in fire suppression. (Pl. Supp. 56.1 ¶ 75). Mindful of his own safety— as well as that of his fellow firefighters and the public—Plaintiff was left with the difficult decision of disobeying a direct order because he knew his supervisors had not provided him with the tools to safely assist in the mission. (Pl. Supp. 56.1 ¶ 76). Defendants' emphasis on the safety of Plaintiff and others is additionally contradicted by their lack of coordination in the event they be allegedly require the Air Mask Technician to engage in fire suppression. The individual (Pl. Supp. 56.1 ¶ 69-70). Defendants, for example, have not testified as to how exactly the ACFD chain of command and the assignments would change to adequately account for the rare—and in if fact non-existent for nearly 30 years accordingly Plaintiff and Mr. Thomas—

occurrence that the Air Mask Technician manning the Air Truck needed to be pulled from his mission and sent into an IDLH to conduct fire suppression. (Pl. Supp. 56.1 ¶ 31-32). Instead, they argue that Defendants have the right to send him into a fire, regardless of whether they have fit tested him or retrained him.

Defendants' second purported legitimate governmental objective fairs no better. While Defendants argue that they must comply with state and federal regulations, they simultaneously admit that they have violated state and federal regulations by failing to fit test Plaintiff or provide the semi-annual retraining required of fire fighters who engage in fire suppression activities. (Droubi Aff. Ex. 4, Culleny (Fact) Tr. 217:10-220:12; Smith Aff. Ex. 19).  Defendants' failure to fit test and retrain Plaintiff more reasonably supports the inference that employees in Fire Administration have not been required to engage in fire suppression and thus do not require fit testing and retraining. Defendants cannot have it both ways. Defendants' practice has been to omit Plaintiff from fit testing and retraining. (Pl. Supp. 56.1 ¶ 16, 76). Given that practice, they cannot simultaneously require that Plaintiff be safely sent into fire suppression without having received fit testing and training required by state and federal law.

For these reasons, Defendants' argument for surviving rational basis review fails. The policy had no rational basis and thus, Defendants violated Mr. Smith's right to freely exercise his religion.

### B.  Fourteenth Amendment Equal Protection

In addition to violating the Free Exercise Clause of the First Amendment, Mr. Smith has also alleged that Defendants violated the Equal Protection Clause under the Fourteenth Amendment of the U.S. Constitution. The Supreme Court has held that "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right

or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). It is well established that "the free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974). "The Equal Protection Clause prohibits selective enforcement 'based on an unjustifiable standard such as race, religion, or other arbitrary classification.'" *U.S. v. Batchelder*, 442 U.S. 114, 125 n.9 (1979).

The Equal Protection clause protects individuals from being "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The purpose of the clause "'is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co. v. Dakota Cty*., 260 U.S. 441, 445 (1923) (quoting S*unday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

For an Equal Protection Claim, a plaintiff must allege: "(1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). "[T]o maintain an equal protection claim of this sort, [a plaintiff] must provide evidence of intentional or purposeful discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home v. Ctrs. For Medicare & Medicaid Servs*., 413 Fed. Appx. 532 (3d Cir. 2011). A plaintiff must "show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse

effects . . . .'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

As the Air Mask Technician for the ACFD, Mr. Smith is tasked with ensuring that cylinders are replenished at the air unit. (Pl. Supp. 56.1 ¶ 69). He cannot enter burning buildings and does not need to don an SCBA. Defendants, knowing this fact, continue to deny Mr. Smith the right to wear his religious beard. This was verified by the prior ACFD Air Mask Technician who stated that he had never seen an Air Mask Technician perform fire suppression or search and rescue activities or don an SCBA mask since he first joined ACFD in 1987. (Droubi Aff. Ex. 12). Others within the Department wear beards and pass the fit test with beards without punishment or mistreatment. (Pl. Supp. 56.1 ¶ 19, 81-82). Genuine issues of material fact exist as to whether, in treating Mr. Smith differently, and not authorizing him to express his sincerely held religious belief when they know he will never be able to engage in fire suppression, they are intentionally discriminating against him on the basis of his religious beliefs.

For the reasons argued above, Defendants' motion for summary judgment should be denied as to Plaintiff's First and Fourteenth Amendment claims, and the corresponding New Jersey State constitutional claims.

## POINT II:
### GENUINE DISPUTES OF MATERIAL FACT EXIST PRECLUDING SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII AND NJLAD CLAIMS OF DISCRIMINATION AND RETALIATION

Plaintiff alleges that Defendants violated his rights under Title VII of the Civil Rights Act of 1964 for failing to accommodate his request for a religious accommodation and that Defendants retaliated against him for both requesting a religious accommodation and filing this action. For the reasons argued herein, summary judgment is inappropriate at this stage.

### A.    Disparate Treatment and Failure to Accommodate

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the

New Jersey Law Against Discrimination ("NJLAD") prohibit intentional discrimination (or "disparate treatment") on the basis of, or "because of," race, color, religion, sex, or national origin.[4] More recently, the Supreme Court explained, "[w]hen it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's [religion] was one but-for cause of that decision, that is enough to trigger the law." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (citation omitted).

In order to establish a *prima facie* case of intentional discrimination, "a plaintiff must show: (1) [he] belonged to a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of discriminatory intent." *Reynolds v. Jersey City Dep't of Pub. Works*, No. 2:18-1418, 2019 U.S. Dist. LEXIS 2091, at *7–8 (D.N.J. Jan. 4, 2019).

Once all factors are established, the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would create an undue hardship upon the employer and its business. *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 224 (3d Cir. 2000). Title VII religious discrimination claims often revolve around the question of whether the employer can show that a reasonable accommodation would create an undue hardship. On June 29, 2023, the U.S. Supreme Court overturned a Third Circuit case to make clear that "undue hardship" requires an employer to show "that the burden of granting an accommodation would result in substantial increased costs in

---

[4] *Ricci*, 557 U.S. at 557; 42 U.S.C. § 2000e (j) ("Religion" is defined as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business").

relation to the conduct of its particular business." *Groff v. DeJoy*, No. 22-174, 600 U.S. ____, 2023 U.S. LEXIS 2790, at *32 (June 29, 2023).

The Supreme Court has made clear that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 773.  Defendants, in particular Defendant Culleny, impermissibly considered Plaintiff's religion in making the decision to deny his accommodation. (Pl. Supp. 56.1 ¶ 41-42); *see Baker*, 445 F.3d at 547 ("the question of the sincerity of an individual's religious beliefs is inherently within that individual's unique purview."). Defendant Culleny questioned the sincerity of Plaintiff's faith before denying his accommodation. (Pl. Supp. 56.1 ¶ 41-42, 50). As such, any decision to deny him the right to wear his beard where he would never have to don an SCBA mask is a violation of Title VII.

There is no question that Mr. Smith belongs to a protected class as a Christian man who is qualified for his position as Air Mask Technician. (Pl. Supp. 56.1 ¶ 1-4). Defendants appear not to dispute that Plaintiff has established his *prima facie* case of failure to accommodate his reasonable beliefs. (Defs' Br. at 20). As an initial matter, while Defendants note that they inquired about other masks that Mr. Smith could be made to wear when directed to respond to a fire, Defendants did not undertake to accommodate Mr. Smith's request by recognizing that he had not—and need not—conduct fire suppression activities and could thus be exempted from the ACFD no-beard policy. Defendants did not engage in the interactive process in order to attempt to find alternative possible accommodations. (Pl. Supp. 56.1 ¶¶ 51-53). Defendants made no effort to accommodate Mr. Smith where he, as Air Mask Technician, would never have to engage in fire suppression and where others within the department openly wear beards for non-religious purposes. Defendants

17

did not engage in the interactive process and did not offer alternative accommodations such as shaving his beard in the rare and extreme circumstances the Defendants argue are the basis for the denial. A prior air mask technician who had not made a reasonable accommodation request was never forced to engage in fire suppression or instructed to don a mask. (Pl. Supp. 56.1 ¶¶ 31-32). Additionally, the exception that exists in ACFD's "no-beard" policy allows for beards in emergency call-back situations. (Pl. Supp. 56.1 ¶ 26). Treating this non-religious reason differently than Mr. Smith's religious one is added proof of discriminatory animus. This failure to accommodate Mr. Smith's sincerely held religious beliefs violates Title VII.

> 1. Adverse Employment Action

Defendants argue that Mr. Smith has not been subjected to an adverse employment action. In addition to legal precedent and guidance by the EEOC that an adverse employment action is not required in failure to accommodate claims, Mr. Smith has in fact suffered adverse employment actions in the form of unlawful discipline and fear of losing his job if he did not comply with orders to appear clean shave.

With respect to claims of a failure to accommodate, an employer violates Title VII "unless it 'demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1980). The EEOC has interpreted this to mean that an adverse employment action is not required for failure to accommodate claims: "the denial of reasonable religious accommodation absent undue hardship is actionable even if the employee has not separately suffered an independent adverse employment action, such as being disciplined,

demoted, or discharged as a consequence of being denied accommodation."[5] The Third Circuit has defined an "adverse employment action" as an action by an employer that is "'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Regardless, Mr. Smith suffered adverse employment actions. Plaintiff was threatened with termination if he did not comply with the order to shave his beard. (Pl. Supp. 56.1 ¶ 44, 51-52). Under threat of suspension or termination, Plaintiff made—and continues to make—the considerable sacrifice to regularly shave his beard despite the emotional distress it causes him for living in contravention to his religious ideals. (Smith Aff. ¶ 72). He did so for purposes of ensuring his job and benefits, relied upon by his family. (*Id.*). Mr. Smith was further disciplined after this litigation was filed when he was ordered to respond to a fire but declined to do so because he was not adequately trained in fire suppression since assuming his role as Air Mask Technician. (Pl. Supp. 56.1 ¶¶ 75-77). As a result, Mr. Smith was suspended for 40 days, including 20 days without pay. (Pl. Supp. 56.1 ¶ 78). Such discipline, which was permanently affixed to his personnel file, materially affected his employment in that it was a permanent stain on his record, affecting his ability to obtain promotions, and altered his status as a rule following officer in all other respects, making him a target for future discipline by his superiors. A finding of guilt related to the failure to comply with a dangerous order and a loss of income for 20 days is exactly the sort of adverse employment action foreseen by the Courts. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) ("adverse employment actions can include suspension without pay").

---

[5] EEOC Guidance, Section 12: Religious Discrimination, *available at* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

2.  Inference of Discrimination

The Supreme Court has made clear that, "[i]f an employer declines to accommodate a particular religious practice, yet accommodates a similar secular (or other denominational) practice, then that may be proof that he has "treated a particular person less favorably than others because of [a] religious practice." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 785 (2015); *Ricci*, 557 U.S., at 577.

Mr. Smith, as Air Mask Technician who is personally tasked with fit testing firefighters who do perform fire suppression and rescue, has seen firefighters pass the fit test with beards. (Pl. Supp. 56.1 ¶ 19). He has passed the fit test with a beard. (Pl. Supp. 56.1 ¶ 18). When manning the air unit, Mr. Smith has seen firefighters with beards don an SCBA mask and engage in fire suppression. (Pl. Supp. 56.1 ¶¶ 81-82). Mr. Smith was never given such an option. He was not given the option to consider shaving his beard in an emergency, much like soldiers in the U.S. Armed Forces who can seek an accommodation and who may be required "to shave if the unit is in, or about to enter, a real tactical situation where use of a protective mask is actually required and where the inability to safely use the mask could endanger the Soldier and the unit."[6] (Pl. Supp. 56.1 ¶ 24); *see also Singh*, 56 F.4th at 88.

Never since at least 1987 has an air mask technician been required to engage in fire suppression or don an SCBA mask. (Pl. Supp. 56.1 ¶¶ 31-32).  And yet, Mr. Smith continues to be denied the right to a religious accommodation to wear his beard. Here, the ACFD has an exception to its "no beard" policy in the form of an emergency call back. (Pl. Supp. 56.1 ¶ 26). ACFD's failure to instruct a firefighter under the emergency call back exception to respond clean shaven allows a reasonable jury to infer that ACFD applies it in a discriminatory fashion.

---

[6] *See*, *e.g.*, Pl. Supp. 56.1 ¶ 24; Droubi Aff. Ex. 10, U.S. Arm Directive 2017-03.

3.  Undue Hardship/Undue Burden

Issues of fact remain as to whether in denying Plaintiff's request, absent undue burden, the Defendants violated Title VII. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 775 ("[R]eligious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated."); *TWA v. Hardison*, 432 U.S. 63, 74 (1977) ("[T]he employer's statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship, is clear." ). Just one day prior to filing this opposition, the Supreme Court clarified that meaning of "undue hardship" in *Groff*. The Court vacated and remanded the Third Circuit's decision which followed a line of cases following *Hardison* that employers need only show a "more than a de minimis cost" in order to deny a religious accommodation. The Court held that, to establish "undue hardship," employers must show that "a burden is substantial in the overall context of an employer's business." *Groff,* 2023 U.S. LEXIS 2790. at *28. The Court further clarified that "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id*. at * 32.

As an initial matter, Defendants never attempted to accommodate Mr. Smith. While Defendant Culleny researched other air masks, neither he nor Defendant Chief Evans nor anyone at ACFD ever engaged in the interactive process or explored possible alternatives *with* Mr. Smith. (Pl. Supp. 56.1 ¶ 53). Defendants did not provide Mr. Smith with any alternative masks that might have accommodated Mr. Smith's sincerely held religious belief. (*Id*.). They did not ask him whether he might consider following the policy of the U.S. Army and agree to shave in the rare and unusual circumstance that they claim was the basis of the denial. (Pl. Supp. 56.1 ¶ 56). Instead, the Defendants denied his request completely, mandating that he be fully clean shaven at all times

due to what they concede is a rare circumstance. They issued this denial without interacting with Mr. Smith and engaging him in the conversation. (Pl. Supp. 56.1 ¶ 50). This is improper because "Title VII's reasonable accommodation provisions contemplate an interactive process, with cooperation between the employer and the employee, but which must be initiated by the employer." *EEOC v. Aldi, Inc*., No. 06-01210, 2008 U.S. Dist. LEXIS 25206, at *41 (W.D. Pa. Mar. 28, 2008).

Defendants argue that accommodating Mr. Smith would be an undue hardship because of "safety concerns" because "the Air Mask Technician may be needed *in an emergency* to respond to a fire call and engage in fire suppression activities, if necessary." (Defs' Br. at 22). Particularly in light of the Supreme Court's ruling in *Groff*, Defendants' arguments are unavailing.

As initial matter, and as noted *supra* Point I.A.2., Defendants' invocation of purported safety concerns belies their non-compliance with the mandatory training Mr. Smith was to receive under state law prior to any order for him to engage in fire suppression. (Pl. Supp. 56.1 ¶ 79). The undue burden Defendants allege is of their own making and in fact has not existed since at least 1987. (Pl. Supp. 56.1 ¶¶ 31-32).

Second, Defendants argue that one less fire fighter engaging in fire suppression would, given staffing issues affecting the department, create an undue burden for the department. (Defs. Mem. at 20). However, Defendants fail to account for the burden that would be caused by Mr. Smith being ordered to engage in fire suppression, thereby leaving his critical role of manning the air truck and filling air tanks vacant at the scene of a fire. (Pl. Supp. 56.1 ¶ 69-70). Plaintiff argues, with support from an expert, that the requirement to be clean shaven in order to don an SCBA does not apply to Mr. Smith because, as the Air Mask Technician, he is responsible for ensuring that the firefighters in fire suppression are safe and that their SCBA cylinders are properly stocked and

filled. (Pl. Supp. 56.1 ¶ 13).

Third, Defendants do not claim that the Air Mask Technician will be needed at all times. The full denial of his right to wear a beard for "emergency" circumstances when there are alternative accommodations cannot be deemed an undue burden.

Fourth, Defendants claim that Mr. Smith may hypothetically at some point in the future be required to engage in fire suppression activities and that they are entitled to order him to engage in fire suppression at any time. However, for five years prior to this litigation, Mr. Smith never had to do so. (Pl. Supp. 56.1 ¶ 16). In fact, no air mask technician had ever done so since 1987. (Pl. Supp. 56.1 ¶ 31-32). And Mr. Smith will never be able to do so safely—for himself, his co-workers, or the public—without leaving his critical role as Air Mask Technician vacant. (Pl. Supp. 56.1 ¶ 69-70). At the time when Mr. Smith was ordered to engage in fire suppression, he had not been retrained in fire suppression and made the difficult—but ultimately correct—decision to disobey a dangerous, direct order. (Pl. Supp. 56.1 ¶ 75-76). Mindful that his superiors had decided to risk not only his safety, but that of his fellow fire fighters and the public by sending him in to fire suppression without the requisite, state mandated quarterly training, Mr. Smith refused the order and filed a complaint with OSHA. (Pl. Supp. 56.1 ¶ 77-79).

Finally, Defendants' argument that allowing Mr. Smith an accommodation would violate regulations is wrong because the regulation is inapplicable to Mr. Smith. (Defs' Br. at 19). The OSHA regulation at issue, 29 § C.F.R. 1910.134, incorporated by New Jersey Department of Health Public Employees Occupation Safe and Health ("PEOSH"), relates to firefighters who are required to don an SCBA mask to conduct "interior structural firefighting." The regulations define "interior structural firefighting" as "the physical activity of fire suppression, rescue or both, inside of buildings or enclosed structures which are involved in a fire situation beyond the incipient

stage." 29 § C.F.R. 1910.134(b). As repeatedly argued here, there is an important question of fact

as to whether Mr. Smith, as the Air Mask Technician, would ever be required to do engage in

"interior structural firefighting," particular without being properly trained. (Droubi Aff. Ex. 2,

Krause Tr. 81:19-82:5). The regulation's specific reference to firefighting in interior structures

reasonably implies that there are roles in fire departments that do not require engage in fire

suppression and promulgated the regulation to apply to only those who perform fire suppression.

Plaintiff has testified that it was ACFD practice that members of the ACFD Fire Administration

of went without fit testing. (Droubi Aff. Ex. 1, Smith Tr. 185:12). None of the members of Fire

Administration were cross-listed as members of a Platoon that would be dispatched to engage in

fire suppression at time Plaintiff requested his accommodation. (Pl. Supp. 56.1 ¶ 6-7). The OSHA

regulation additionally includes a provision regarding how employers are to staff responses to an

IDLH area:

> (3) Procedures for IDLH atmospheres. For all IDLH atmospheres,
> the employer shall ensure that:
> (i) One employee or, when needed, more than one employee is
> located outside the IDLH atmosphere;

29 § C.F.R. 1910.134(g)(3). ACFD could allow Plaintiff's accommodation while also complying

with OSHA, but Defendants did not engage Plaintiff in the interactive process to explore that

possibility. A reasonable jury may infer that, by allowing members of Fire Administration to go

without fit testing, that such members reasonable had no expectation that they would be called to

engage in fire suppression or have to don an SCBA.

It is hardly reasonable to claim undue burden on the premise of rare and unusual safety

circumstances that could easily be remedied by an accommodation with a carve out to shave for

such unusual circumstances. Issues of fact remain as to whether Defendants' purported burden

satisfies the requirements under Title VII. At a minimum, an issue of fact exists as to whether an

air mask technician should ever wear an SCBA and whether alternative accommodations exist that would eliminate any alleged burden. *Baker*, 445 F.3d at 548 ("An employer does not fulfill its obligation to reasonably accommodate a religious belief when it is confronted with two religious objections and offers an accommodation which completely ignores one.") Therefore, Defendants' motion should be denied as to Plaintiff's Title VII claim.

### B.   Retaliation

Employers violate Title VII when "'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). Moreover, "Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." *Cosgrove*, 9 F.3d at 1039 (citations omitted). The same standard is applicable to Plaintiff's retaliation claim pursuant to NJLAD. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim). The *McDonnell Douglas* burden-shifting analysis used in Title VII discrimination claims applies to retaliation claims brought pursuant to Title VII. Thus, "[a] plaintiff raising a claim of [retaliation] has a similar burden of initially establishing a prima facie case of retaliation." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

To establish a prima facie case of retaliation, under Title VII and the NJLAD, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001). To state a *prima facie* case of Title VII retaliation is not an onerous burden. *Texas Dep't of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981).

At the first step, a plaintiff must establish a prima facie case of retaliation. To do so, a plaintiff must show that "1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). To establish a causal connection, a plaintiff "must produce evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse employment action.'" *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)) (emphasis in original). A court may consider a "broad array of evidence" to find a causal link. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). "Unusually suggestive" temporal proximity between the protected activity and adverse action may be "sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citations omitted). Otherwise, a court considers "whether the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id*. at 232 (internal citation omitted). Evidence may include an "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id*. at 232-33

If a plaintiff puts forth a prima facie case, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious*, 851 F.3d at 257. An employer can satisfy its burden of production at the second step by providing evidence that "advance[es] a legitimate, non-retaliatory reason for its conduct." *Moore*, 461 F.3d at 342.

Finally, at the third step, a plaintiff must "convince the factfinder both that the employer's proffered non-retaliatory explanation was false [that is, a pretext], and that retaliatory animus was the 'real reason for the adverse employment action.'" *Carvalho-Grevious*, 851 F.3d at 258 (quoting *Moore*, 461 F.3d at 342). In other words, a plaintiff must prove, by a preponderance of the evidence, that the harm would not have occurred but-for the protected activity. *Id*. at 258. A plaintiff can do this by "demonstrat[ing] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted nonretaliatory reasons." *Carvalho-Grevious*, 851 F.3d at 262 (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)) (internal quotation marks and brackets omitted).

An "adverse action" for purposes of a retaliation claim is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "In other words, if the action taken by the [Defendant] would tend to dissuade a reasonable employee from engaging in future protected action, it would suffice to form the adverse action requirement of [Plaintiff's] prima facie case of retaliation." *Rivers v. Potter*, No. 05-4868, 2007 U.S. Dist. LEXIS 92590, at *26-27 (D.N.J. Dec. 11, 2007).

Here, Defendants retaliated against Mr. Smith by denying his request for accommodation and threatening suspension if he reported to work with a beard, (Pl. Supp. 56.1 ¶¶ 50-51), and ordering that he response to a fire to conduct fire suppression though he had not been fit tested or properly trained in violation of state law. (Pl. Supp. 56.1 ¶¶ 75-79). Plaintiff engaged in the protected activity of filing for a religious accommodation. (Pl. Supp. 56.1 ¶ 33). He also engaged in the protected activity of filing a lawsuit to complain of the denial of that accommodation. After the filing of this lawsuit, Defendants attempted to require Mr. Smith to respond to fire suppression

when he was not properly trained to do so and when no Air Mask Technician had been asked to do so since 1987. (Pl. Supp. 56.1 ¶¶ 75-79). As a result, Mr. Smith was suspended for 40 days; 20 days of which were uncompensated. (*Id.*). This was a substantial financial burden for Mr. Smith and his family. (Pl. Supp. 56.1 ¶ 72).

### C.      New Jersey Law Against Discrimination

For the reasons argued above, Defendants' argument that they are entitled to summary judgment on Plaintiff's NJLAD claims for discriminatory failure to accommodate and retaliation must also fail. Defendants' additional argument that permitting an accommodation for Plaintiff not to be required to engage in fire suppression because it would violate the collective bargaining agreement is unavailing. As argued *supra* Point I.B.2., Defendants' argument that unfettered discretion to assign Mr. Smith to fire suppression contradictions their purported safety interests. As Plaintiff's expert testified, ACFD has the discretion to decide the role Mr. Smith plays at a fire scene, (Droubi Aff. Ex. 2, Krause Tr. 81:12-18), but he would be unable to perform the duties of an Air Mask Technician if he engaged in fire suppression. (Pl. Counter 56.1 Resp. ¶ 15). Though Defendants allege that other employees in the ACFD have some training in utilizing the Air Truck, Defendants have pointed to no other employee who has the contractual title of Air Mask Technician. Requiring Plaintiff to engage in fire suppression would not only leave a gap in the "accountability" at the scene of the fire, it would also interfere with Mr. Smith's contractual title.

The cases Defendants cite are inapposite. In *Township of Maplewood*, Commission Designee Gerber found that an emergency existed regarding ambulance response times and allowed the Township Fire Chief Sam Santucci to require firefighters to perform EMT duties. (Dkt. No. 115-26). However, that requirement was rescinded and the Chief ordered an alternative permanent solution. (*Id.*). Defendants argue that the City of Atlantic City suffers a staffing shortage

but has not alleged that such a shortage is an emergent situation that requires the alteration of Plaintiff's responsibilities and duties. In fact, news reports on the issue indicates the opposite. (Droubi Aff. Ex. 11).

Therefore, Defendants' argument that allowing the accommodation would violate the collective bargaining agreement does not support that Defendants have not violated the NJLAD.

## <u>POINT III:</u>
## PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE PROPER

Defendants concede that the Individual Defendants are amenable to suit under Plaintiff's Count I and II claims. Their arguments as to the individual defendants' ability to sue the individual defendants under NJLAD are incorrect. Chief Evans and Deputy Chief Culleny aided and abetted in the discrimination and retaliation of Plaintiff. (Pl. Supp. 56.1 ¶¶ 50-52, 75-79). The New Jersey Law Against Discrimination ("NJLAD") contains a separate provision which expressly contemplates individual liability for supervisors who "aid or abet" an employer's unlawful employment actions. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999). This provision makes it unlawful for "any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." N.J.S.A. 10:5-12(e).

To hold an employee liable as an aider and abettor, a plaintiff must show: "(1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563 (N.J. 2008) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir.1999)). Aiding and abetting "require[s] active and purposeful conduct." *Id*. (citing *Tarr v. Ciasulli*, 181 N.J. 70 (N.J. 2004)).

Here, Defendants Evans and Culleny were both copied on Mr. Smith's request. (Smith Aff. Ex. 10). They were personally involved in the decision to deny Plaintiff's request for an accommodation and to initiate discipline in retaliation for his refusal to obey a dangerous order. (Pl. Supp. 56.1 ¶¶ 50-52, 75-79). Moreover, the Chief's continued refusal to allow an accommodation particularly when Plaintiff had not been fit tested, retrained, or called to engage in fire suppression and don a mask for years, would cause Plaintiff harm is similarly "active and purposeful conduct" under NJLAD. *Lefkowitz v. Westlake Master Ass'n*, No. 18-14862, 2019 U.S. Dist. LEXIS 25600, at *14 (D.N.J. Feb. 19, 2019) (finding that a complaint stated a claim for aiding and abetting where it asserted "that Individual Defendants took 'active and purposeful conduct' in furtherance of an NJLAD violation by rejecting Plaintiffs' several requests for accommodations and modifications."). Here, genuine disputes as to material facts related to the active and purposeful conduct by the Individual Defendants' denial of his accommodation and retaliatory conduct require that this case proceed to trial on the issue of their aiding and abetting in the discrimination and retaliation on the basis of Plaintiff's religion in violation of NYLAD.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be denied in its entirety.

Dated: June 30, 2023
     New York, New York

Respectfully Submitted,
BELDOCK LEVINE & HOFFMAN LLP

By: s/ Luna Droubi
        Luna Droubi
        Marc Arena

*Attorneys for Plaintiff*