## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

ALEXANDER SMITH,

               Plaintiff,

     v.

CITY OF ATLANTIC CITY, *et al.*,

               Defendants.

No. 1:19-cv-6865

**OPINION**

---

**APPEARANCES**:

Luna Droubi
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, NY 10016

    *On behalf of Plaintiff.*

Nicholas DelGaudio
CLEARY GIACOBBE ALFIERI & JACOBS
955 State Route 34, Suite 200
Matawan, NJ 07747

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

    This matter comes before the Court on a Motion for Summary Judgment by Defendants City of Atlantic City ("City"), Chief Scott Evans, and Deputy Chief Thomas Culleny (collectively, "Defendants"). (ECF No. 115). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

I.      **BACKGROUND**[1] **and PROCEDURAL HISTORY**

Plaintiff is an African American male and Christian who was hired as an Atlantic City Fire Department ("ACFD") firefighter in 2004. (Defs. SOMF, ECF No. 115-2 ¶ 8; Pl. SOMF, ECF No. 122-1 ¶ 8; Pl. Suppl. SOMF, ECF 122-2 ¶ 1). Plaintiff is also an ordained minister at a local church. (ECF No. 122-2 ¶ 1). In November 2015, he began working in the Department's Fire Shop as an Air Mask Technician. (ECF No. 115-2 ¶ 9; ECF No. 122-1 ¶ 9). Plaintiff is "one of only a handful of trained Air Mask Technicians for the ACFD." (ECF No. 122-2 ¶ 15).[2]

As an Air Mask Technician, Plaintiff administers and oversees all self-contained breathing apparatuses ("SCBAs") for the Department. (ECF No. 122-2 ¶ 9). SCBAs are worn when engaging in activities that require the use of an air mask such as fire suppression and search and rescue. (ECF No. 115-2 ¶ 13; ECF No. 122-1 ¶ 13). The Air Mask Technician also conducts yearly SCBA fit and flow tests, repairs SCBAs, and reports to the scene of fires mainly to man the Air Unit and refill air bottles. (ECF No. 115-2 ¶ 14; ECF No. 122-1 ¶ 14; ECF No. 122-2 ¶ 13). Pursuant to the Department's Respiratory Protective Program, "all personnel responding to any type of fire or any other emergency incident" must follow the "standardized use of [an] SCBA" when exposed to hazardous air. (ECF 115-2 ¶ 15; ECF 122-1 ¶ 15).

To ensure the proper fit of SCBA's, ACFD members are prohibited from growing facial hair that inhibits or interferes with the seal of an SCBA's face piece. (ECF No. 115-2 ¶ 27; ECF No. 122-1 ¶ 27). Members of the Department are required to be clean shaven while on duty, and beards and goatees of any type are specifically prohibited. (ECF No. 115-2 ¶ 27; ECF No. 122-1

---

[1]  The facts set forth herein are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

[2]  The number of firefighters in the ACFD has decreased from 274 in April 2009 to 189 in January 2019. (ECF 115-2 ¶ 19; ECF 122-1 ¶ 19).

¶ 27). There is one exception to this policy: members called into work "on an emergency call-back" are not required to shave prior to arriving at the station or the scene of a fire. (ECF No. 115-2 ¶ 27; ECF No. 122-1 ¶ 27). After arriving, if the firefighter has more than a "five o'clock shadow," he is ineligible to fight a fire and prohibited from donning an SCBA. (ECF No. 115-2 ¶ 29; ECF No. 122-1 ¶ 29).[3]

In December 2018, Plaintiff began growing a beard as an exercise of his faith. (ECF 122-2 ¶¶ 29–30). On January 3, 2019, Plaintiff submitted a request for a religious accommodation to wear a three-inch beard. (ECF No. 155-2 ¶ 31; ECF No. 122-1 ¶ 31).[4]

After responding to a fire on January 7, 2019, Plaintiff was told that, by instruction from the City Solicitor's office, he was prohibited from responding to fire emergencies until a decision was made on his religious accommodation request. (ECF No. 122-2 ¶¶ 38–40). On January 9, 2019, the New Jersey State Department of Health's Public Employees Occupational Safety and Health ("PEOSH") informed Deputy Chief Culleny by email that there existed no religious exemption for ACFD members who wished to wear a beard. (ECF No. 115-2 ¶ 34; ECF No. 122-1 ¶ 34). PEOSH's guidance was based on the Occupational Safety and Health Administration's ("OSHA") interpretation of its regulation requiring the use of respirators in certain scenarios. (ECF No. 115-2 ¶ 35).

Plaintiff filed an employee complaint on February 4, 2019, restating the bases for his request and requesting information as to when he would be permitted to respond to fire emergencies. (ECF No. 122-2 ¶¶ 45–47). On February 15, 2019, the City denied Plaintiff's request

---

[3] Plaintiff disputes Defendants' "interpretation" of the exemption but neither provides an alternative interpretation, nor disputes that firefighters with more than a five o'clock shadow are prohibited from donning an SCBA.

[4] An earlier request made by a fellow firefighter for exemption of the grooming policy for non-religious, medical reasons was denied. (ECF No. 115-2 ¶ 30; ECF No. 122-1 ¶ 30).

for a religious accommodation. (ECF No. 115-2 ¶ 38; ECF No. 122-1 ¶ 38). The denial cited safety concerns for Plaintiff, his fellow firefighters, and the public as the basis for the ACFD's decision. (ECF No. 122-2 ¶ 51).

On August 4, 2020, Plaintiff was ordered to perform fire suppression activities in response to a tropical storm. (ECF No. 115-2 ¶ 20; ECF No 122-1 ¶ 20). The ACFD was responding to numerous emergencies, including several structural collapses. (ECF No. 115-2 ¶ 21). Plaintiff refused the order. (ECF No. 115-2 ¶ 20; ECF No 122-1 ¶ 20). Three firefighters responded to the scene and had to seek special approval to respond without Plaintiff, who was ordered to be the fourth member of the response team. (ECF No. 115-2 ¶ 21). Plaintiff remained in the Fire Shop while all other members of the ACFD were placed in emergency roles. (ECF No. 115-2 ¶ 21).

On February 25, 2019, Plaintiff commenced this action against Defendants alleging First Amendment, Equal Protection, and Title VII violations, and related state law claims. (ECF No. 1 at ¶¶ 59–87). The next day, Plaintiff filed an application for a temporary restraining order and preliminary injunction, (ECF No. 2), which was denied on March 22, 2019. (ECF Nos. 14, 15).

Defendants filed the instant summary judgment motion on April 26, 2023. (ECF No. 115). Plaintiff filed his opposition on June 30, 2023, (ECF No. 122), to which Defendants replied on August 14, 2023. (ECF No. 127).

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion

for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may

not make credibility determinations or engage in any weighing of the evidence; instead, the non-

moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his

favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477

U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the

evidence and decide the truth of the matter but rather "to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its

motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the

pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at

324 (internal quotations and citation omitted). To withstand a properly supported motion for

summary judgment, the non-moving party must identify specific facts and affirmative evidence

that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is

merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."

*Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*,

477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails

to make a showing sufficient to establish the existence of an element essential to that party's case."

*Celotex Corp.*, 477 U.S. at 322.

### III.   <u>DISCUSSION</u>

Defendants have moved for summary judgment on all Counts under Federal Rule of Civil

Procedure 56(a), arguing that Plaintiff is unable to establish that Defendants violated Plaintiff's religious freedoms or equal protection rights, or that Defendants discriminated against him on the basis of religion. (Defs. Br., ECF No. 115-29 at 7–9). After reviewing the record, the Court concludes that Defendants are entitled to summary judgment on all Counts.

### A. Defendants are Entitled to Summary Judgment on Plaintiff's Free Exercise Claims

In Count One of the Complaint, Plaintiff brings claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), alleging that Defendants violated his right to freely exercise his religion under the federal and state constitutions. (ECF No. 1 at ¶¶ 59–69). Plaintiff's federal and state free exercise claims will be analyzed together. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011) (analyzing NJCRA and § 1983 claims together and collecting cases that "repeatedly interpret[ the] NJCRA analogously to § 1983."); *Schaad v. Ocean Grove Camp Meeting Ass'n of United Methodist Church*, 72 N.J. 237, 266 (N.J. 1977) (explaining that the "letter and spirit" of the New Jersey Constitution's free exercise provision is "substantially of the same purpose, intent and effect" as that of the First Amendment), *overruled on other grounds by State v. Celmer*, 80 N.J. 405, 418 (N.J. 1979).

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I; *see also* N.J. CONST. art. I, § 3. Typically, "a free exercise claim can prompt either strict scrutiny or rational basis review" depending on the nature of the law or government action challenged. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002), *cert. denied*, 539 U.S. 942 (2003). "To survive strict scrutiny, a challenged government action must be narrowly tailored to advance a compelling government interest, whereas rational basis review requires merely that the action be rationally related to a legitimate government objective." *Id.* at 165 n.24.

The level of scrutiny applied turns on the nature of the challenged action. If the action is neutral and generally applicable, it burdens religious conduct only incidentally and rational basis review is applied. *Id.* at 165. In such a circumstance, "the Free Exercise clause offers no protection" and any free exercise claim must necessarily fail. *Id.* at 165, 167; *see, e.g.*, *Emp. Div. v. Smith*, 494 U.S. 872, 882 (1990) (applying rational basis review to a neutral and generally applicable law outlawing peyote which incidentally burdened the Native American Church, and holding that no religious exemption was required). A government action is not neutral "if it discriminates against religiously motivated conduct," and is not generally applicable if it prohibits "particular conduct only or primarily when religiously motivated." *Tenafly*, 309 F.3d at 165.

To determine if a policy is facially neutral, a court must look not only at its text, but whether it is enforced "on a religion-neutral basis." *Id.* at 167. If enforcement of an otherwise facially neutral law or policy is dependent on the Government's "evaluation of the reasons underlying a violator's conduct," the law or policy cannot be considered neutral and strict scrutiny applies. *Id.* at 165–66. The Supreme Court in *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* applied strict scrutiny when an otherwise facially neutral law outlawing the unnecessary killing of animals was enforced to prohibit the religious sacrifice of animals but not the secular killing of animals for hunting or food. 508 U.S. 520, 537 (1993). There, the selective application of the law "devalue[d] religious reasons for killing [animals] by judging them to be of lesser import than non[-]religious reasons," which caused religiously motivated conduct to be "singled out for discriminatory treatment." *Id.* at 537–38. The Court held that the law violated the Free Exercise clause because its "proffered objectives [were] not pursued [against] analogous non-religious conduct." *Id.* at 546.

Though free exercise claims typically receive either rational basis review or strict scrutiny, there are limited circumstances in which intermediate scrutiny is warranted. In the context of

public employment,[5] if the enforcement of an otherwise facially neutral law or policy is "sufficiently suggestive of discriminatory intent," the law or policy is deemed not generally applicable and intermediate scrutiny is applied. *Tenafly*, 309 F.3d at 166, 166 n. 27; *see, e.g.*, *Fraternal Ord.*, 170 F.3d at 365 (applying intermediate scrutiny to a no-beard policy that was exempted for medical purposes but not for religious motivations). To survive intermediate scrutiny, the challenged action must be substantially related to promoting an important government interest. *Tenafly*, 309 F.3d at 166 n. 27.

Here, Defendants submit that Plaintiff's free exercise claims are subject to rational basis review because the ACFD's grooming policy "imposes the same limitations on every comparable firefighter, and does not provide for any categorical exemptions to the no-beard rule." (Defs. Br., ECF No. 115-29 at 13). According to Defendants, this makes the policy facially neutral and generally applicable. (ECF No. 115-29 at 13). Plaintiff disagrees and argues that strict scrutiny is required. (Pl. Br., ECF 122 at 8). According to Plaintiff, the policy's emergency call-back exception is sufficiently suggestive of discriminatory intent because it allows members called in during emergencies to forego shaving prior to arriving at the station or a fire, but does not exempt those with "religious beards" from the policy. (ECF No. 122 at 8). Thus, the Court must first determine the appropriate level of scrutiny.

As a threshold matter, Plaintiff's strict scrutiny argument is unavailing. Under Third Circuit precedent, the Court could only subject the grooming policy to strict scrutiny if it found the policy

---

[5] In the public employment context, a facially neutral law may not be analyzed under more than intermediate scrutiny "because First Amendment rights are limited in the public employment context by a government's need to function efficiently." *Tenafly*, 309 F.3d at 166 n. 27; *see, e.g.*, *Fraternal Ord. of Police*, 170 F.3d 359, 366 n.7 (3d Cir. 1999) (applying intermediate scrutiny to a facially neutral law "since th[e] case arose in the public employment context."), *cert. denied*, 528 U.S. 817 (1999).

lacked facial neutrality. *See Fraternal Ord.*, 170 F.3d at 366 n.7 (in the public employment context, a facially neutral law may only reach intermediate scrutiny). The Court declines to do so. The policy makes no reference to religion or religious beliefs. It is therefore neutral on its face. *See Church of Lukumi*, 508 U.S. at 533–34. The policy is also enforced "on a religion-neutral basis." *Tenafly*, 309 F.3d at 167. Plaintiff does not dispute that a fellow firefighter's request for a medical, non-religious exemption to the grooming policy was denied, (Pl. SOMF, ECF No. 122-1 ¶ 30), and has presented no evidence that the policy is enforced inconsistently or in any way other than on a religion-neutral basis. The grooming policy appears to have no motivation beyond safety and does not target religious conduct. *See Valdes v. New Jersey*, No. 05-3510, 2007 WL 1657354, at *6–7 (D.N.J. June 6, 2007), (finding that the Department of Corrections' no-beard policy was facially neutral because it did not target religiously motivated conduct and was motivated by safety), *aff'd* 313 F. App'x 499 (3d Cir. 2008). Therefore, because the policy is facially neutral, and because Plaintiff's claims arise in the public employment context, the choice for the Court here is between only rational basis review and intermediate scrutiny.

In the public employment context, heightened or intermediate scrutiny is warranted if the challenged action is "sufficiently suggestive of discriminatory intent." *Tenafly*, 309 F.3d at 166 (quoting *Fraternal Ord.*, 170 F.3d at 365). A categorical exemption for secular objections can be evidence of such intent. *Fraternal Ord.*, 170 F.3d at 365. If such an exemption exists, courts use intermediate scrutiny to determine whether the Government is "deciding that secular motivations are more important than religious motivations." *Id.*

Though Plaintiff argues otherwise, the Court is not convinced that the call-back exception—which *temporarily* waives the grooming policy for *all* ACFD members, including

Plaintiff, in the event of an emergency—can be suggestive of discriminatory intent.[6] It is clear that this temporary exception is in cases of emergency only and in the interests of public safety. Nor is there evidence of Defendants treating secular motivations more importantly than religious motivations. To the contrary, Defendants have a history of denying all requests for exemption, regardless of whether secularly or religiously motivated. This is in stark contrast to the instances in which courts have applied heightened scrutiny to otherwise facially neutral laws and policies. *See Church of Lukumi*, 508 U.S. at 546 (exemptions for the secular killing of animals indicated government was discriminating against religious sacrifice of animals); *Fraternal Ord.*, 170 F.3d at 365 (granting medical exemptions of a police department's no-beard policy while denying religious exemptions indicated government was discriminating against only the religiously-motivated request to grow a beard); *Tenafly*, 309 F.3d at 167 (application of an oft-ignored ordinance against only the conduct of Orthodox Jews indicated government was discriminating against only religiously-motivated conduct).

By denying *all* requests for exemption, Defendants have not engaged in any "evaluation of the reasons underlying a violator's conduct," which would require application of intermediate scrutiny. *Tenafly*, 309 F.3d at 165–66. Unlike in *Tenafly* where the government enforced an oft-ignored ordinance only when one religious group was in violation, *id.* at 168, and in *Fraternal Ord.* where a police department allowed medical, but not religious, exemptions to its no-beard policy, 170 F.3d at 366, here, the grooming policy is enforced throughout the ACFD. Regardless of the motivation behind a request for exemption, Defendants have denied all requests, including against those seeking medical, non-religious exemptions to the policy. For this reason,

---

[6] The Court notes that, pursuant to the call-back exception, the highest-ranking officer at the scene of a fire deems those with more than a five o'clock shadow ineligible to wear an SCBA. (Defs. SOMF, ECF No. 115-2 ¶ 29).

governmental no-beard policies are frequently found to be neutral and generally applicable when imposed uniformly. *See*, *e.g.*, *Valdes*, 2007 WL 1657354, at *6 (finding the Department of Corrections' no-beard policy neutral and generally applicable because it is uniformly imposed and crafted in furtherance of safety); *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 60 (E.D.N.Y. 2021) (finding a fire department's clean-shaven policy to be facially neutral and generally applicable to all "firefighters without exception.").

As Plaintiff's arguments for heightened scrutiny are unavailing, his free exercise claims are subject to rational basis review, which requires that the grooming policy be "rationally related to a legitimate government objective." *Tenafly*, 309 F.3d at 165 n.24.

Defendants submit that the grooming policy advances the government's legitimate objectives of (1) firefighter safety and (2) following state and federal regulations which prohibit facial hair. (ECF No. 115-29 at 13–14). Safety is a well-recognized legitimate government objective. *Fraternal Ord.*, 170 F.3d at 366. And a fire department's ability to comply with state and federal regulations is certainly a legitimate government objective. *See e.g.*, *Hamilton*, 563 F. Supp. 3d at 60.

The grooming policy is rationally related to these objectives. First, and most obviously, the policy ensures that the ACFD complies with various state and federal regulations that prohibit devices like SCBAs to be worn by those with facial hair. *See*, *e.g.*, 20 C.F.R. § 1910.134(g). Second, there is no dispute that PEOSH and OSHA find that an ill-fitting SCBA creates a safety risk not only to the firefighter wearing it, but also to fellow firefighters who may be tasked with rescuing those with an ill-fitted mask. Firefighter safety is put at risk when anything inhibits the seal of an SCBA, including facial hair. This is contemplated in the text of the policy which provides that "[f]acial hair of any type shall not interfere with the seal of SCBA face piece." (ECF No. 115-

2 ¶ 27; ECF No. 122-1 ¶ 27). Therefore, the grooming policy prohibiting facial hair is rationally related to the government's legitimate objective of firefighter safety. *See also Valdes*, 313 F. App'x at 501 (upholding a facially neutral no-beard policy under rational basis review).

As the grooming policy is rationally related to the government's legitimate objectives, it survives rational basis review.[7] While Plaintiff's religion may be incidentally burdened by the policy, the Free Exercise clause "offers no protection" in such a circumstance and Plaintiff's free exercise claim necessarily fails. *Tenafly*, 309 F.3d at 165. Defendants are entitled to summary judgment on Count One.

### B. Defendants are Entitled to Summary Judgment on Plaintiff's Equal Protection Claims

In Count Two of his Complaint, Plaintiff brings claims under 42 U.S.C. § 1983 and the NJCRA for violation of his federal and state equal protection rights. (ECF No. 1 at ¶¶ 70–75). As in Section III. A., *supra*, Plaintiff's federal and state claims will be analyzed together. *See Trafton*, 799 F. Supp. 2d at 443–44; *Schaad*, 72 N.J. at 266–67.

The factual bases for Plaintiff's "First Amendment and Equal Protection claims are functionally identical." *Hill v. City of Scranton*, 411 F.3d 118, 125–26 (3d Cir. 2005). The "substantive guarantees of the [First] Amendment serve as the strongest protection against the limitation of [religious] rights." *Id.* at 126. Therefore, "[i]f a law passes muster under the First Amendment it is also likely to be upheld under the Equal Protection clause." *Id.* (citation omitted). The Court analyzes Plaintiff's equal protection claims against this backdrop.

---

[7] Even if the Court were to apply intermediate scrutiny, the grooming policy would survive review. The Government's important interest in safety and following regulations is substantially related to the policy.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1; *see also* N.J. CONST. art. I, § 1. To find a violation of the right to equal protection, a court must determine if the government "intentionally discriminate[d] against a reasonably identifiable group," and, if so, "whether that intentional discrimination [wa]s nonetheless legally justified." *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015). To successfully make out an equal protection claim, a plaintiff must be able to demonstrate "(1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill*, 411 F.3d at 125).

Ultimately, a plaintiff must allege and prove "intentional discrimination," and a plaintiff's "religious affiliation must have been a substantial factor in that different treatment." *Hassan*, 804 F.3d at 294. "[M]ere unequal treatment or adverse effect" is not enough in the absence of "intentional or purposeful discriminatory purpose." *Jewish Home of E. Pa. v. Ctrs. For Medicare & Medicaid Servs.*, 469 F. App'x 99, 103 (3d Cir. 2012). If the challenged policy or action is facially neutral, a plaintiff can prove intentional discrimination if the policy is applied "with a greater degree of severity" against his religion or if it was "designed to impose different burdens" on his religion. *Hassan*, 804 F.3d at 294 (internal quotation marks and citations omitted). A plaintiff must also show that a "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects" on his religion. *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal quotation marks and citation omitted).

By virtue of his religion, Plaintiff belongs to a reasonably identifiable group. However, Plaintiff provided no evidence that, in denying his religious exemption request, Defendants treated him differently than others outside of that group. In fact, the opposite is true. Defendants have treated Plaintiff in the exact same manner as all other members of the ACFD – by requiring adherence to the grooming policy, and by denying all requests for exemption from it, whether secularly or religiously motivated.

Because Plaintiff has not been treated differently than members of an unprotected class, Defendants have not violated his equal protection rights and are entitled to summary judgment on Count Two.

### C. Defendants are Entitled to Summary Judgment on Plaintiff's Failure to Accommodate and Retaliation Claims

In Counts Three and Four of his Complaint, Plaintiff brings failure to accommodate and retaliation claims under Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("LAD"). (ECF No. 1 at ¶¶ 76–87). Specifically, Plaintiff alleges that Defendants failed to accommodate his exemption request and retaliated against him on the basis of the request. As in Sections III. A. and B., *supra*, Plaintiff's federal and state discrimination claims will be analyzed together. *See Stallone v. Camden Cnty. Tech. Schs. Bd. of Educ.*, No. 12-7356, 2013 WL 5178728, at *3 (D.N.J. Sept. 13, 2013) (analyzing Title VII and LAD claims in tandem because "New Jersey courts 'have frequently looked to case law under Title VII . . . for guidance in developing standards to govern the resolution of LAD claims'") (quoting *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354, 370 (N.J. 2007)).

#### 1. Failure to Accommodate

Title VII prohibits religious discrimination in the workplace. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008). Under 42 U.S.C. § 2000e(j), an

employer is required to make reasonable accommodations for an employee's religious beliefs and practices unless doing so would create an "undue hardship" for the employer. *Wilkerson*, 522 F.3d at 319. To establish a *prima facie* case of failure to accommodate, an employee must show that he: (1) "has a sincere religious belief that conflicts with a job requirement;" (2) "told the employer about the conflict;" and (3) "was disciplined for failing to comply with the conflicting requirement." *Id.* If a *prima facie* case is established, "the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such accommodation would work an undue hardship upon the employer." *Webb v. City of Phila.,* 562 F.3d 256, 259 (3d Cir. 2009).

Though the standard for evaluating an undue hardship has consistently been a "more than *de minimis* cost" on the employer, the Supreme Court recently held that "showing 'more than a *de minimis* cost,' . . . does not suffice to establish 'undue hardship' under Title VII." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Instead, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id.* An undue hardship can be shown if "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [the employer's] particular business." *Id.* at 470. In determining whether an undue hardship exists, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer" and "should resolve whether a hardship would be substantial in the context of an employer's business in [a] common-sense manner." *Id.* at 470–71 (internal quotes and alteration omitted).

The Court "le[ft] it to the lower courts to apply [its] clarified context-specific standard." *Id.* at 473. Since *Groff*, the Third Circuit has not had occasion to apply this clarified standard, nor

have any courts within this District. Only one sister court within the Third Circuit has reviewed the standard in the context of a motion for summary judgment. *See Shields v. Main Line Hosps. Inc.*, No. 22-3307, 2023 WL 7129953, at *6–7 (E.D. Pa. Oct. 27, 2023) (denying motions for summary judgment when there existed genuine issues of material fact as to whether an employee's request for religious exemption of an employer's vaccine requirement imposed an undue burden under *Groff*). Outside of this Circuit, the Fifth Circuit recently reversed a grant of summary judgment when the Department of Corrections failed to accommodate an officer's request for a religious exemption that would allow him to grow more than the one-quarter-inch beard permitted by the Department. *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 722–24 (5th Cir. 2023).[8] And at least one district court has granted summary judgment under the clarified *Groff* standard. *See DeVore v. Univ. of Ky. Bd of Trs.*, No. 22-0186, 2023 WL 6150773, at *6 (E.D. Ky. Sept. 20, 2023) (finding that allowing a manager of a small department with only two full-time employees to work remotely full time or to force the employer to hire another employee would cause an undue hardship).

The Parties appear to agree that Plaintiff has established a *prima facie* case of failure to accommodate. (Defs. Br., ECF 115-29 at 27; Pl. Br., ECF 122 at 17). Therefore, the burden shifts to Defendants to "show either [they] made a good-faith effort to reasonably accommodate [Plaintiff's] religious belief, or such accommodation would work an undue hardship upon the employer." *Webb*, 562 F.3d at 259. To show the latter under *Groff*, Defendants must show "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." 600 U.S. at 470.

---

[8] Notably, that medical exemptions of the policy were granted contradicted the argument that a beard imposed an undue hardship. *Id.* at 723–24.

Defendants inquired with their SCBA vendor and a separate vendor to determine whether there existed a mask that could be safely worn with facial hair. (ECF No. 115-2 ¶ 37; ECF No. 122 at 17, 21). None does – and that is not disputed. (ECF No. 115-2 ¶ 37).[9] Thus, Defendants have shown that they "made a good-faith effort to reasonably accommodate [Plaintiff's] religious belief." *Webb*, 562 F.3d at 259. While it appears that the Court's analysis could end here because Defendants must show *either* a good faith effort to accommodate *or* that an accommodation would cause an undue hardship, *id.*, the Court continues with its undue hardship analysis.

Under *Groff*, an undue hardship can be shown if "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." 600 U.S. at 470. Such costs can be economic or non-economic. *Webb*, 562 F.3d at 260. Here, the conduct of Defendants' "business" is that of a typical fire department. Granting Plaintiff's request for accommodation would come at a substantial non-economic cost for the ACFD. It would mean that, going forward, Plaintiff would never be able to don an SCBA without creating substantial risk to himself and, by extension, his fellow firefighters. Having one member of the ACFD who, in perpetuity, would be unable to don an SCBA safely would work an undue hardship on the ACFD's ability to conduct the typical activities of a fire department. Such restrictions on manpower would also jeopardize the safety of the general public.

Though Plaintiff submits that his role as an Air Mask Technician would never require him to wear an SCBA, (ECF No. 122 at 17), that contention is belied by the record of undisputed material fact. Even though Plaintiff was already in his current role in the Fire Shop in 2020, he

---

[9] Plaintiff disputes other portions of paragraph 37, but does not dispute the information given to Defendants by the vendors. (ECF No. 122-1 ¶ 37); *see also* (ECF No. 122 at 17, 21). Plaintiff concedes that the "risk in wearing the SCBAs with facial hair is that it would reduce the duration of the air supply or tank life." (ECF No. 122-2 at ¶ 67).

was nonetheless ordered to perform fire suppression duties that year and refused to do so. (ECF No. 115-2 ¶ 20; ECF No 122-1 ¶ 20). Regardless of the reasons for Plaintiff's refusal, the fact remains that he has at least on one occasion been ordered to perform fire suppression duties—despite being an Air Mask Technician—and could be called on to do so again, as is the reality of the duty of all members of the ACFD. (ECF No. 115-2 ¶ 16). And Plaintiff does not dispute that an Air Shop custodian engaged in fire suppression after being ordered to do so in 2020. (ECF No. 115-2 ¶ 15; ECF No. 122-1 ¶ 15). Therefore, Plaintiff's contentions regarding the responsibilities and duties of Fire Shop employees are belied by undisputed facts in the record. The fact that it may be an infrequent responsibility or duty does not negate that being able to safely respond to fire emergencies and provide a response that does not risk the safety of his fellow firefighters, the public, or himself, is an essential duty of a firefighter.

"[C]ommon sense" suggests that Plaintiff's refusal to perform fire suppression in 2020 presented an undue hardship on the ACFD. *Groff*, 600 U.S. at 471. In that instance, the ACFD was responding to numerous emergencies during a tropical storm, including several structural collapses. (ECF No. 115-2 ¶ 21; ECF No. 122-1 ¶ 20). Plaintiff's fellow firefighters were forced to respond to an emergency call with only three members, though their mission required four. (ECF No. 115-2 ¶ 21). Regardless of their official title, all ACFD members besides Plaintiff—who refused to leave the Fire Shop—were placed in emergency response roles that day. (ECF No. 115-2 ¶ 21). The Court is hard-pressed to imagine a circumstance that would create a greater undue burden—or a higher cost—on a fire department than the potential risk of injury or loss of life to a fellow firefighter or member of the public.

Even if Plaintiff were never ordered to perform fire suppression duties again, there are circumstances where, in his role as an Air Mask Technician, he could be required to use an SCBA

under the ACFD's Respiratory Protective Program which requires each member of the department to use an SCBA whenever "exposed to any hazardous atmosphere." (ECF No. 115-2 ¶ 15).[10] Plaintiff does not dispute that he is required to respond to the scene of fires as an Air Mask Technician. (ECF No. 115-2 ¶ 14; ECF No. 122-1 ¶ 14).[11] As testified to by Plaintiff's expert, conditions could worsen at the scene such that the air outside of the building is considered "hazardous." (ECF No. 115-2 ¶ 23).[12] Under the Respiratory Protective Program, Plaintiff would be required to use an SCBA in this circumstance, even if he never enters the building or performs fire suppression activities. Plaintiff's expert also testified to other emergency circumstances that could require use of an SCBA, including rescuing "fellow firefighters who are in dire need." (ECF No. 115-2 ¶ 17; ECF No. 122-1 ¶ 17). Giving any member of the ACFD the discretion to not do so would undoubtedly work an undue hardship on the Department.

Finally, that Defendants have denied medical, non-religious exemptions to the grooming policy further supports the argument that allowing any member of the ACFD to be exempt from the policy would work an undue hardship. *See Hebrew*, 80 F.4th at 723–24 (granting medical exemptions of a no-beard policy contradicted the argument that granting a religious exemption would work an undue hardship).

---

[10] Plaintiff does not dispute the text of the Respiratory Protective Program. (ECF No. 122-1 ¶ 15).

[11] Nor does Plaintiff dispute that the "ACFD has the discretion to decide the role [Plaintiff] plays at a fire scene." (ECF No. 122 at 28).

[12] Without explanation, Plaintiff disputes that air conditions can change at the scene of a fire. (ECF No. 122-1 ¶ 23). Such conclusory statements and speculation do not render this fact in dispute. *See Lavecchia v. Walmart Inc.*, No. 20-9035, 2023 WL 4074059, at *2 (D.N.J. June 20, 2023) ("In attempting to defeat summary judgment, speculation and conclusory allegations do not satisfy the nonmoving party's duty" to refrain from "rest[ing] on mere allegations.") (quoting *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020)) (alterations omitted).

The Court is satisfied that accommodating Plaintiff's religious belief would work an undue hardship upon Defendants.

### 2. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). If a *prima facie* case is established, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* at 342 (internal citation and quotations omitted). "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Id.*

As a preliminary matter, Plaintiff's Complaint does not specify how Defendants retaliated against him. (ECF No. 1 ¶¶ 76–87). When asked this question at his deposition, Plaintiff responded three times that Defendants retaliated against him only by denying his request for religious exemption from the grooming policy. (ECF No. 115-2 ¶¶ 41–42; ECF No. 122-1 ¶ 42). It was alleged for the first time in Plaintiff's response to Defendants' Statement of Material Fact in the context of this motion that Defendants retaliated by charging Plaintiff with insubordination for refusing to engage in fire suppression activities. (ECF No. 122-1 ¶ 41). And now, for the first time in his opposition, Plaintiff alleges that Defendants' threatened suspension for showing up to work with a beard also constituted retaliation. (ECF No. 122 at 27). Plaintiff does not dispute or attempt

to recant his deposition testimony. (ECF No. 122-1 ¶ 42). A Plaintiff's opposition to summary judgment that "is in complete contrast to his deposition testimony" is "insufficient to withstand a motion for summary judgment." *Davila v. City of Camden*, 66 F. Supp. 3d 529, 535 n.5 (D.N.J. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).

Further, even if the Court were to consider Plaintiff's newly asserted retaliation allegations, Defendants have a "legitimate, non-retaliatory reason for [their] conduct." *Moore*, 463 F.3d at 342. Denying Plaintiff's exemption request, charging him with insubordination, and threatening to suspend him for violating the grooming policy all further Defendants' legitimate government interest in safety and ability to enforce the grooming policy, the text and enforcement of which is constitutional and furthers the ACFD's objective safety interests. Plaintiff has provided no evidence that Defendants' "proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*

Thus, Defendants are entitled to summary judgment on Counts Three and Four.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 115) is **GRANTED** in its entirety. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**